## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| NICHOLAS S. GOULETAS, | ) | No. 16-01335 |
| | ) | |
| Debtor. | ) | Hon. Timothy A. Barnes |
| | ) | |
| | ) | |
| 800 SOUTH WELLS COMMERCIAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. _____ |
| | ) | |
| NICHOLAS S. GOULETAS, | ) | |
| | ) | |
| Debtor/Defendant. | ) | |

### COMPLAINT OBJECTING TO DISCHARGEABILITY OF
### DEBT TO PLAINTIFF AND DISCHARGE OF DEBTOR

Plaintiff complains of Defendant as follows:

### Summary Of The Suit

1. The Debtor/Defendant, Nicholas S. Gouletas ("Gouletas"), engaged in self-dealing and otherwise breached fiduciary duties that he owed to Plaintiff 800 South Wells Commercial ("800 SWC"), which resulted in an $11,550,040.12 judgment against Gouletas in favor of 800 SWC. The debt reflected by that judgment is non-dischargeable pursuant to 11 U.S.C. §§523(a)(4) & (a)(6). *See Catrambone v. Adams*, 498 B.R. 839 (N.D. Ill. 2013) (Bucklo, J.).

2. In connection with the subsequent state court citation proceedings, Gouletas concealed assets and fraudulently transferred assets in violation of the citation lien. On the eve of being held in contempt for numerous violations of that citation lien, Gouletas sought sanctuary in

this Court by the filing of a Chapter 7 bankruptcy petition. Pursuant to 11 U.S.C. §727(a)(2)(A), Gouletas should be denied a discharge because he fraudulently transferred and concealed his assets within the one-year period preceding his bankruptcy filing. *See Marcus-Rehtmeyer v. Jacobs*, 784 F.3d 430 (7th Cir. 2015).

## Parties

3. Plaintiff 800 South Wells Commercial LLC ("Plaintiff" or "800 SWC") is an Illinois limited liability company with its principal place of business in Cook County, Illinois.

4. Debtor/Defendant Nicholas S. Gouletas ("Gouletas") is an individual who resides in Cook County, Illinois.

## Jurisdiction And Venue

5. This Court has jurisdiction pursuant to 28 U.S.C. §1334. This suit is a core proceeding within the meaning of 28 U.S.C. §157(b).

6. Venue is appropriate in this Court pursuant to 28 U.S.C. §§1408 and 1409.

## Facts

### A. Background

7. In 1997, the River City Complex located at 800 South Wells Street, Chicago, Illinois consisted of (a) an apartment complex of 448 apartments; (b) 240,000 square feet of commercial/retail/office space (the "Commercial Space"); (c) a 133 space underground parking garage (the "Parking Garage"); (d) a surface parking lot; and (e) a 64 slip marina on the Chicago River.

8. In April of 1997, a Gouletas-related entity, American Invesco Development Corporation, purchased the River City Complex for $41,300,000. Sometime thereafter, Plaintiff became the owner of the long-term leasehold interests in the Commercial Space and the Parking

Garage. From the time of acquisition of the above leasehold interests until November 16, 2006, Gouletas was the owner of 50% of the membership interests in Plaintiff; was the duly appointed manager of Plaintiff; and dominated and controlled the business affairs and operations of Plaintiff.

9. As of late 2005, Gouletas had refinanced the leasehold interests in the Commercial Space and the Parking Garage on numerous occasions, which were encumbered by two substantial leasehold mortgages. The first mortgage was comprised of two loans from Parkway Bank and Trust Company ("Parkway") to Plaintiff in the original principal amount of $18,500,000 (the "First Mortgage"). By the end of 2005, the First Mortgage loan was current, with the amount owed by Plaintiff to Parkway totaling approximately $11,750,000.

10. The Commercial Space and the Parking Garage were also encumbered by a second leasehold mortgage lien in favor of CIB Bank ("CIB"), which was comprised of a $5,900,000 loan from CIB to Plaintiff (the "Second Mortgage"). In March of 2005, the Second Mortgage was acquired by D.A.N. Joint Venture III, L.P. ("DJV"). By the end of 2005, the Second Mortgage loan was in default, with the amount owed by Plaintiff to DJV totaling approximately $10,000,000.

11. Gouletas was the former manager of Plaintiff 800 SWC. As the manager and control person of Plaintiff, Gouletas had a duty to manage the business operations of Plaintiff in such a manner as to maximize the profits of Plaintiff. Further, Gouletas hired a Gouletas-related company, Invesco Management Company, Inc. (d/b/a American Invesco) ("Invesco"), to manage the Commercial Space in exchange for management fees paid by Plaintiff to Invesco.

12. From 2001 until November 16, 2006, Gouletas grossly mismanaged Plaintiff by (a) diverting income and assets from Plaintiff to other Gouletas-related entities; (b) not

authorizing the expenditure of sufficient funds to upgrade the rental spaces; (c) not leasing out the Commercial Space to the point where an acceptable vacancy level of 15% or less could be reached; and (d) leasing out prime portions of the Commercial Space to Gouletas-related entities at below market rates.

13. As a result of the gross mismanagement of the Commercial Space by Gouletas and Invesco, Plaintiff was not able to realize full market value for the Commercial Space and the Parking Garage when they were sold at a foreclosure sale on July 24, 2007 for $11,500,000. Had Gouletas properly managed the Commercial Space and maintained a vacancy rate of 15% or below, the sale of the Commercial Space and Parking Garage leasehold interests in July of 2007 would have generated enough income to pay off both the First Mortgage and the Second Mortgage. Indeed, if the Commercial Space had been properly managed by Gouletas, the Commercial Space and the Parking Garage would have been worth two times the value that they sold for on July 24, 2007.

    **B.**     **Gouletas Is Sued For Self-Dealing And Breaching Fiduciary Duties Owed To Plaintiff**

14. Due to the default of Plaintiff in paying the Second Mortgage, on November 16, 2006 DJV, as the holder of the Second Mortgage, took over control of the voting rights of Plaintiff, and thereafter removed Gouletas as the manager of Plaintiff.

15. On March 17, 2011 800 SWC filed suit against Gouletas in the Circuit Court of Cook County, Illinois, No. 2011-L-2895 for self-dealing and breaching fiduciary duties owed to 800 SWC (the "Underlying Suit"). Gouletas was represented by counsel in connection with the Underlying Suit, and actively participated in pretrial proceedings.

16. Gouletas, however, steadfastly refused to sit for his deposition in the Underlying Suit, and even used "withdrawal of counsel" as a basis to avoid his deposition. Because of

Gouletas' pattern of discovery abuse, on December 5, 2013 Plaintiff filed a Motion for Sanctions against Gouletas, which was granted by the Court in the Underlying Suit on December 11, 2013. (Px A) After Gouletas, once again, failed to sit for his deposition, on January 23, 2014 the Court in the Underlying Suit entered a Default Judgment Order against Gouletas in the amount of $11,550,040.12 (Px B) (the "Judgment").

17. Thereafter, Gouletas, through counsel, took an appeal of the Judgment to the Appellate Court of Illinois, First District, No. 14-0781 (the "First Appeal"). In connection with the First Appeal, Gouletas falsely represented that he was "no longer able to pay for counsel [to defend the Underlying Suit]", and that he was "not represented from September 9, 2013 through the date the Judgment was entered in January of 2014." On November 6, 2014 the Court of Appeals granted Gouletas' Motion to Dismiss the First Appeal.

18. On August 7, 2014 Gouletas filed in the Underlying Suit a Petition under Section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401) (the "2-1401 Petition") seeking to set aside the Judgment. In connection with the 2-1401 Petition, Gouletas, once again, falsely represented that he was "no longer able to pay for counsel [to defend the Underlying Suit]", and that he was "not represented from September 9, 2013 through the date the default judgment was entered in January of 2014." On September 18, 2014, the trial court in the Underlying Suit denied Gouletas' 2-1401 Petition.

19. On October 20, 2014 Gouletas, through counsel, appealed the trial court's Order Denying Gouletas' 2-1401 Petition to the Appellate Court of Illinois, First District, No. 14-3214 (the "Second Appeal"). On April 2, 2015, the Court of Appeals dismissed Gouletas' Second Appeal for want of prosecution.

### C. The Citation Proceedings Against Gouletas

20. Due to Gouletas' failure to pay the amount owed under the Judgment, on June 5, 2014 Plaintiff filed a Citation to Discover Assets against Gouletas (Px C) (the "Citation") in connection with the Underlying Suit (the "Citation Proceedings"). The Citation was personally served on Gouletas on June 9, 2014.

21. In the Citation, it was clearly stated that:

> **YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of . . . any property not exempt from execution . . . belonging to the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtor . . ., until further order of Court or termination of the proceedings.

(Px C p. 1)

22. In August of 2014 Gouletas filed his Answer to the Citation (Px D) (the "Citation Answer"), wherein Gouletas represented under oath that he did not own any real estate. (*Id*. p. 2) In addition, on August 11, 2014 Gouletas represented in a sworn Income and Asset Disclosure Form filed in the Citation Proceedings (Px E) (the "Citation Disclosure Form") that he did not own any real estate. (*Id.* p. 2) Gouletas' representations about not owning any real estate were knowingly false. Indeed, Gouletas owned, with his sister, Evangeline Gouletas, a single family home in Greece (the "Greece Property"), which he inherited, with his sister, in approximately 2008. At no time in connection with the Citation Proceedings did Gouletas amend or correct his Citation Answer or his Citation Disclosure Form, or otherwise reveal his ownership interest in the Greece Property. Indeed, on September 30, 2014 Gouletas received an email from his sister, Evangeline, about the Greece Property (Px F), yet Gouletas still did not reveal his ownership interest in the Greece Property during the pendency of the Citation Proceedings. Accordingly, in

connection with the Citation Proceedings, Gouletas concealed his ownership interest in the Greece Property.

23. Further, in his Citation Answer Gouletas represented under oath that he did not own any stock. (Px D p. 2) In addition, in his Citation Disclosure Form, Gouletas represented under oath that he had no accounts other than three checking accounts and one savings account. (Px E p. 2) At no time did Gouletas amend or correct these representations. In fact, however, Gouletas owned stock in CIB Marine Bankshares with the shares held in a brokerage account in his name at TD Ameritrade. Accordingly, in connection with the Citation Proceedings, Gouletas concealed his ownership interest of the CIB Marine stock and his brokerage account with TD Ameritrade.

24. Further, in Gouletas' Citation Answer, he represented that the only personal property that he owned was clothing and office furniture. (Px D p. 2) In his Citation Disclosure Form (Px E), Gouletas did not list ownership in any valuable collectible items. During the Citation Proceedings, however, Gouletas owned a Wurlitzer jukebox worth approximately $10,000, and a mechanical violin/piano (like a player piano, but a violin) worth between $40,000 to $70,000. At no time during the Citation Proceedings did Gouletas amend or correct these representations. Accordingly, in connection with the Citation Proceedings, Gouletas concealed his ownership interest in these valuable collectibles.

25. The Citation (Px C) was served on Gouletas on June 9, 2014. In violation of the Citation, on or about September 5, 2014, Gouletas sold the stock that he owned in CIB Marine Bankshares and, through his account at TD Ameritrade, fraudulently transferred $51,322.29 from the sale of that stock to the checking account of his wife, Natel Matschulat. (Px G)

26. In addition, on March 25, 2015, Gouletas represented under oath that he "does not have a membership interest in . . . NKM Garvey, LLC" (Px H p. 10), which is an LLC that owns a 13% interest in a mixed use high-rise retail/office/condominium project under construction at Clark and Lake Streets in downtown Chicago. Contrary to Gouletas' representation, he does in fact have an ownership interest in NKM Garvey, LLC. At no time did Gouletas amend or correct this representation. Accordingly, in connection with the Citation Proceedings, Gouletas concealed his ownership interest in NKM Garvey, LLC.

27. Moreover, on or about the following dates, Gouletas violated the Citation lien (served upon Gouletas on June 9, 2014) by transferring funds that, legally or equitably, belonged to Gouletas:

(a) In violation of the Citation, on or about September 5, 2014, Gouletas transferred $51,323.29 of his own funds into an account in the name of his wife, Natel Matschulat.

(b) In violation of the Citation, on or about September 5, 2014, Gouletas caused the transfer of a check in the amount of $51,328.85 to an undetermined account at an undetermined bank with a "Chicago LaSalle Branch".

(c) In violation of the Citation, on or about July 30, 2014, Gouletas withdrew $2,745.52 from his checking account at Republic Bank.

(d) In violation of the Citation, on or about July 30, 2014, Gouletas, as the remitter, had a cashier's check in the amount of $1,745.52 issued to ComputerShare.

(e) In violation of the Citation, on or about July 31, 2014, Gouletas, as the remitter, had a cashier's check in the amount of $1,530.52 issued to himself.

(f) In violation of the Citation, on or about August 1, 2014, Gouletas, as the remitter, had a cashier's check in the amount of $10,000.00 issued to himself.

(g)     In violation of the Citation, on or about August 22, 2014, Gouletas, as the remitter, had a cashier's check in the amount of $1,500.00 issued to himself.

(h)     In violation of the Citation, on or about August 22, 2014, Gouletas, as the remitter, had a cashier's check in the amount of $2,500.00 issued to himself.

(i)     In violation of the Citation, on or about September 9, 2014, Gouletas paid $2,500 to NR-Advisors (Niko Roussos).

(j)     In violation of the Citation, on or about February 6, 2015, Gouletas (through Dorothea Touris) paid $190,000 to his son, Steven Gouletas.

(k)     In violation of the Citation, on or about February 6, 2015, Gouletas paid $5,000 to his son, Steven Gouletas.

(l)     In violation of the Citation, on or about March 24, 2015, Gouletas paid $7,200 to his son, Steven Gouletas.

28.     Further, during the Citation Proceedings, Gouletas would routinely deposit his personal funds into checking accounts titled in the name of wife, Natel Matschulat, and would routinely withdraw funds from those accounts for his personal benefit. In addition, during the Citation Proceedings, Gouletas had his wife "lend" large sums of money to Gouletas to cover the payment of legal fees for the bankruptcy filings by certain of Gouletas' entities. During this entire period of time when Gouletas had free and unfettered access to the funds deposited in his wife's checking accounts, Gouletas now claims that his wife, Natel Matschulat, was *non compos mentis*, yet the only person who acted as the guardian for his wife during that time period was Gouletas himself. In connection with the Citation Proceedings, Gouletas concealed his free and unfettered access to the funds in checking accounts that were titled in the name of his wife, Natel Matschulat, and his routine withdrawal of funds from those accounts for his personal benefit.

29.     In addition, Home By Invsco, Inc. ("HBI") was an Illinois corporation owned and controlled by Gouletas, and was, in fact, the alter-ego of Gouletas. In January of 2015, HBI

received $2,038,703.84 in net proceeds from the sale of certain properties that were owned by other Gouletas entities that were also, in fact, the alter-egos of Gouletas. Later in January of 2015, Gouletas had his alter-ego, HBI, disburse over $2,000,000 of those proceeds to certain alleged "creditors" of HBI, which included the payment of debts that were owed by Gouletas personally, including Gouletas' personal legal fees. Gouletas, however, never disclosed, and thus concealed, these payments of his personal debts in connection with the Citation Proceedings.

30.    Further, at the Citation Examination of Gouletas held on October 20, 2014, Gouletas represented that he did not make any of the mortgage payments for his condominium at 111 East Chestnut Street, Suite 28K, Chicago, Illinois, and did not pay any of the utility bills or condominium association dues. These representations were false. In fact, Gouletas would routinely pay the mortgage payments, utility bills, and condominium association dues for his condominium.

31.    Finally, in a signed financial statement dated as of March 31, 2013, Gouletas represented that he had a net worth of $25,287,653. (Px I) At the time the Citation was served on Gouletas on June 9, 2014, Gouletas and his wife, Natel Matschulat, lived in two condominium units (Suites 28J & 28K) at 111 East Chestnut Street in Chicago. In Rider A to the Citation, Gouletas was required to produce "[c]opies of all homeowner's insurance policies . . . that have insured any property that [Gouletas] owns or has the benefit of use of, for the past five years." (Px C p. 4 ¶IV(C)) Further, the trial court in the Citation Proceedings entered four separate orders (dated July 10, 2014; August 4, 2014; September 24, 2014; and December 18, 2014) requiring Gouletas to comply with the Citation and produce the homeowner's insurance policies covering his residence, which would list the valuable items of personal property owned by

Gouletas. Gouletas, however, steadfastly refused to produce the homeowner's insurance policies. Accordingly, Gouletas concealed his property within one year of his bankruptcy filing.

### D.     The Contempt Proceedings Against Gouletas

32.     Based on the numerous violations by Gouletas of the Citation lien, on April 24, 2015 Plaintiff filed a Motion for Contempt against Gouletas, which was amended on October 9, 2015 (the "Contempt Motion"). The trial court (White, J.) conducted hearings in connection with the Contempt Motion on July 20, 2015, September 2, 2015, and November 24, 2015. The documents introduced in evidence and the testimony by Gouletas during these contempt hearings conclusively proved that Gouletas had, on numerous occasions, intentionally violated the Citation lien.

33.     The final day of the contempt hearing was scheduled for January 19, 2016. On the eve of being held in contempt for violation of the Citation lien, on January 17, 2016 Gouletas sought sanctuary in this Court by the filing of a Chapter 7 bankruptcy petition.

34.     All conditions precedent to recovery by Plaintiff have been performed or have occurred.

35.     Plaintiff realleges all preceding and succeeding paragraphs for each of the following Counts.

### COUNT ONE
### (Non-Dischargeable Debt Pursuant To 11 U.S.C. §523(a)(4))

36.     Pursuant to 11 U.S.C. §523(a)(4), a debtor is not entitled to discharge a debt "for fraud or defalcation while acting in a fiduciary capacity . . .."

37.     The Judgment rendered against Gouletas in the Underlying Suit was for fraud or defalcation by Gouletas while acting in a fiduciary capacity. Accordingly, pursuant to 11 U.S.C.

§523(a)(4), Gouletas is not entitled to a discharge of the debt owed to Plaintiff in connection with the Judgment.

## COUNT TWO
### (Non-Dischargeable Debt Pursuant To 11 U.S.C. §523(a)(6))

38. Pursuant to 11 U.S.C. §523(a)(6), a debtor is not entitled to discharge a debt "for willful and malicious injury by the debtor to another entity or the property of another entity . . .."

39. The Judgment rendered against Gouletas in the Underlying Suit was for willful and malicious injury by Gouletas to Plaintiff and the property of Plaintiff. Accordingly, Gouletas is not entitled to a discharge of the debt owed to Plaintiff in connection with the Judgment.

## COUNT THREE
### (Denial Of Discharge Pursuant To 11 U.S.C. §727(a)(2))

40. Pursuant to 11 U.S.C. §727(a)(2), a debtor's bankruptcy discharge should be denied where "(2) the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred . . . or concealed (A) property of the debtor within one year before the date of the filing of the petition . . .."

41. The course of conduct set forth above shows that Gouletas, with intent to hinder, delay or defraud a creditor, transferred or concealed his property within one year before the date of the filing of his bankruptcy petition on January 17, 2016. Accordingly, Gouletas should be denied a bankruptcy discharge pursuant to 11 U.S.C. §727(a)(2).

## PRAYER

Plaintiff 800 South Wells Commercial LLC respectfully requests that the Court rule (1) that the debt to Plaintiff as reflected by the Judgment is non-dischargeable pursuant to 11 U.S.C. §§523(a)(4) & (a)(6), and (2) that Gouletas is denied a bankruptcy discharge pursuant to 11

U.S.C. §§727(a)(2)(A), and grant to Plaintiff such other and further relief to which Plaintiff may be entitled.

                                          Respectfully submitted,

                                          ARMSTRONG LAW FIRM

Dated: March 1, 2016.                By   */s/F. Dean Armstrong*
                                                F. Dean Armstrong
                                          1324 Dartmouth Road
                                          Flossmoor, IL  60422
                                          708/798-1599
                                          Fax: 708/798-1597
                                          Email: armstronglaw@sbcglobal.net
                                          **Attorneys for 800 South Wells Commercial LLC**

### Certificate of Service

The undersigned certifies that a true and correct copy of the foregoing pleading was served upon all parties receiving CM/ECF noticing on this 1st day of March, 2016 and by email on this date to the following:

                    Howard Teplinsky, Esq.
                    Beermann Pritikin Mirabelli Swerdlove LLP
                    161 North Clark Street, Suite 2600
                    Chicago, IL 60601
                    312/621-9700
                    hteplinsky@beermannlaw.com

                    William J. Factor, Esq.
                    Ariane Holtschlag, Esq.
                    The Law Office of
                    William J. Factor, Ltd.
                    105 W. Madison St., Suite 1500
                    Chicago, Illinois 60602
                    312.878.4830
                    Fax: 847.574.8233
                    Email: wfactor@wfactorlaw.com
                                aholtschlag@wfactorlaw.com
                    **Attorneys for Debtor/Defendant**
                    **Nicholas S. Gouletas**

        Richard M. Fogel, Trustee
        Shaw Fishman Glantz & Towbin LLC
        321 N. Clark Street, Suite 800
        Chicago, IL  60654
        312/276-1334
        Email: rfogel@shawfishman.com

                      */s/F. Dean Armstrong*
                      F. Dean Armstrong