# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| NICHOLAS S. GOULETAS, | ) | No. 16-01335 |
| | ) | |
| Debtor. | ) | Hon. Timothy A. Barnes |
| ———————————————— | ) | |
| | ) | |
| 800 SOUTH WELLS COMMERCIAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 1:16 ap 141 |
| | ) | |
| NICHOLAS S. GOULETAS, | ) | |
| | ) | |
| Debtor/Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The undisputed summary judgment evidence shows that the Debtor, Nicholas S. Gouletas ("Gouletas"), deliberately concealed his assets, and transferred hundreds of thousands of dollars of his funds into a checking account held in the name of a close personal friend, within one year of his bankruptcy filing. As shown by the following, summary judgment is appropriate as to Count Three of Plaintiff's Adversary Complaint asserting that Gouletas should be denied a discharge pursuant to 11 U.S.C. §727(a)(2)(A).

### Summary Judgment Standards

In a similar §727(a)(2)(A) case, the Seventh Circuit summarized the applicable summary judgment standards as follows:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact  and that the moving party is entitled to a judgment as

> a matter of law." Fed. R. Civ. P. 56(c). A party resisting summary judgment cannot succeed simply by resting on his pleadings, he must come forth with positive evidence in support of his position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). There is no "genuine" issue of material fact "for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). "When the moving party has carried its burden under Rule 56(c) , its opponents must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmovant.

*In re Kontrick*, 295 F.3d 724, 735-36 (7th Cir. 2002).

## Undisputed Facts

The undisputed facts supporting summary judgment are set forth in Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment, which is hereby incorporated by reference as if set forth verbatim.

## ARGUMENT

**I.    The Undisputed Summary Judgment Evidence Shows That Gouletas Should Be Denied A Bankruptcy Discharge Under 11 U.S.C. §727(a)(2)(A)**

Pursuant to 11 U.S.C. §727(a), a bankruptcy discharge should be denied a debtor where

> (2) the debtor, with intent to hinder, delay, or defraud a creditor . . ., has transferred . . . or concealed, or has permitted to be transferred . . . or concealed -
>
> > (A) property of the debtor, within one year before the date of the filing of the [bankruptcy] petition . . . .

Accordingly, for Plaintiff 800 SWC to prevail on its Complaint for denial of Gouletas' bankruptcy discharge under §727(a)(2)(A), 800 SWC must show that:

(1)    The Debtor, Gouletas;

2

(2)     transferred or concealed;

(3)     Gouletas' property;

(4)     with the intent to hinder, delay, or defraud a creditor;

(5)     within one year of bankruptcy (*i.e.*, at any time from January 17, 2015 to January 17, 2016).

*See Kontrick*, 295 F.3d at 736. As summarized by the Seventh Circuit, "[t]he exception to discharge in §727(a)(2)(A) essentially 'consists of two components: [1] an act (*i.e.*, a transfer or a concealment of property) and [2] an improper intent (*i.e.*, a subjective intent to hinder, delay or defraud a creditor).'" *Kontrick*, 295 F.3d at 736 (*quoting Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).

### A.     The Undisputed Summary Judgment Evidence Shows That Gouletas Transferred And Concealed His Property Within One Year Of Bankruptcy

The undisputed summary judgment evidence shows that Gouletas transferred or concealed his property within the time period from January 17, 2015 to January 17, 2016, which was within one year of his bankruptcy filing on January 17, 2016. The property of Gouletas that was transferred or concealed was (1) his ownership interest in a house in Greece (S/F nos. 37-39[1]); (2) his ownership of valuable items of personal property (S/F nos. 40-42); (3) his ownership interest in the Garvey Court Project and NKM Garvey, LLC (S/F nos. 43-47); and (4) his deposit of funds into two checking accounts held in the name of his close personal friend, Dorothea Touris ("Touris"), and his use of those accounts for his personal financial benefit (S/F nos. 48-65).

In the context of a §727(a)(2)(A) action, "concealment" includes "preventing discovery,

---

[1] "S/F no. __" refers to the numbered paragraph in Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment.

fraudulently transferring or withholding knowledge or information required by law to be made known." *Marcus-Rehtmeyer v. Jacobs*, 784 F.3d 430, 442 (7th Cir. 2015) (*quoting In re Scott*, 172 F.3d 959, 967 (7th Cir. 1999)). In connection with the Citation proceedings initiated by 800 SWC, Gouletas was required to disclose, and had a continuing obligation to disclose, (1) his ownership interest in a house in Greece; (2) his ownership of valuable items of personal property; (3) his ownership interest in the Garvey Court Project and NKM Garvey, LLC; and (4) his deposit of funds into two checking accounts held in the name of Touris and use of those accounts for his personal financial benefit. *See Marcus-Rehtmeyer*, 784 F.3d at 441-42. The undisputed summary judgment evidence shows that during the course of the Citation Proceedings, Gouletas withheld knowledge or information required by law to made known pertaining to the above property of Gouletas. *See id*. at 438-44. Accordingly, Gouletas "concealed" his property within the meaning of §727(a)(2)(A) by withholding knowledge or information about his property which was required by law to be disclosed.

Further, the undisputed summary judgment evidence shows that Gouletas deposited his funds into checking accounts held in the name of his close personal friend, Touris (S/F nos. 48-65), which were accounts over which Gouletas had no control. (*Id*. no. 55) Those deposits constituted "transfers" of Gouletas' property in violation of §727(a)(2)(A). *See Kontrick*, 294 F.3d at 737-38 ("By depositing his paycheck into an account over which he had no control, [the debtor] put those funds beyond the reach of his creditors . . .. * * * [The debtor] violated section 727(a)(2)(A) by depositing his paycheck into the family account, over which he had no control").

Here, Gouletas filed for Chapter 7 bankruptcy on January 17, 2016 (S/F no. 35), so the issue under §727(a)(2)(A) is whether Gouletas transferred or concealed, or permitted to be transferred or concealed, any of his property at any time from January 17, 2015 to the date he

filed for bankruptcy on January 17, 2016. *See Marcus-Rehtmeyer*, 784 F.3d at 441-44.

Under Illinois law, a judgment debtor's duty to disclose assets continues throughout the entire time a Citation proceeding is pending. *See id*. at 438 & 441-44. As noted by the Seventh Circuit in *Marcus-Rehtmeyer*:

> The nature of [Illinois Citation] proceedings themselves dictate that [the judgment debtor] had a continuing duty to disclose her assets up until the time the citation was terminated [upon the judgment debtor's filing of bankruptcy].
>
> * * *
>
> The obligation to disclose assets continued during the entire pendancy of the citation to discover assets.

784 F.3d at 438 & 443.

The undisputed summary judgment evidence shows that the Citation was served upon Gouletas on June 9, 2014, and continued in effect at all times until Gouletas filed for Chapter 7 bankruptcy on January 17, 2016. (S/F nos. 26 & 36) Accordingly, Gouletas' duty to disclose his assets continued at all times from June 9, 2014 until January 17, 2016. The undisputed summary judgment evidence shows that Gouletas, however, concealed (that is, withheld knowledge or information required by law to be disclosed) (1) his ownership interest in a house in Greece (S/F nos. 37-39); (2) his ownership of valuable items of personal property (S/F nos. 40-42); (3) his ownership interest in the Garvey Court Project and NKM Garvey, LLC (S/F nos. 43-47); and (4) his deposit of funds into two checking accounts held in the name of Touris and use of those accounts for his personal financial benefit (S/F nos. 48-65), up until the time the Citation proceedings expired when Gouletas filed for bankruptcy on January 17, 2016. *See Marcus-Rehtmeyer*, 784 F.3d at 441-44. Therefore, the undisputed summary judgment evidence shows that Gouletas concealed his property within the relevant look back period set forth in

§727(a)(2)(A).

In addition, the undisputed summary judgment evidence shows that from late January of 2015 until March 17, 2015 (during the §727(a)(2)(A) look-back period), Gouletas transferred hundreds of thousands of dollars of his own money into checking accounts held in the name of Touris (S/F nos. 48-65), over which Gouletas did not have the right on his own to withdraw the funds. (S/F no. 55). As was the situation in *Kontrick*:

> The bankruptcy court was entitled to conclude that those deposits were "transfers" of [the debtor's] property, with the "intent to hinder, delay or defraud a creditor" within one year of filing for bankruptcy. 11 U.S.C. §727(a)(2)(A). By depositing his paycheck into an account over which he had no control, [the debtor] put those assets beyond the reach of his creditors . . ..

295 F.3d at 737.

Accordingly, the undisputed summary judgment evidence shows that Gouletas transferred and concealed his property within one year of the filing of bankruptcy.

### B. The Undisputed Summary Judgment Evidence Shows That Gouletas Concealed His Property With The Intent To Hinder, Delay Or Defraud 800 SWC, A Judgment Creditor Of Gouletas

Rarely will a debtor confess to concealing assets with the intent to hinder, delay or defraud creditors. Accordingly, and by necessity, fraudulent intent may be shown by circumstantial evidence. *See Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002); *Ruter v. Schryver (In re Schryver)*, 558 B.R. 856, 875 (Bankr. N.D. Ill. 2016).

Moreover, the Seventh Circuit has ruled that

> not caring whether some representation is true or false -- the state of mind known as "reckless disregard" -- is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material.

*In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). Further, "a showing of reckless disregard for the

truth is sufficient to prove fraudulent intent." *Stamat v. Neary*, 635 F.3d 974, 982 (7th Cir. 2011). In that connection, the "cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent." *Id.* (quotation marks and citation omitted).

Here, the summary judgment evidence reveals, beyond any reasonable doubt, Gouletas' intent to hinder, delay or defraud 800 SWC in connection with its ongoing efforts to execute upon Gouletas' assets toward satisfaction of 800 SWC's judgment against Gouletas. Most telling is Gouletas' failure to list his ownership interest in the house in Greece in the Citation proceedings, and his continuing failure to disclose that asset, even though he received confirmation of that ownership interest from his sister by email on September 30, 2014, which was shortly after Gouletas filed a sworn pleading denying his ownership interest in any real estate. (*See* S/F nos. 37-39)

In addition, it strains credulity to think that Gouletas simply forgot about his ownership of a Wurlitzer juke box worth approximately $10,000, and a mechanical violin (like a player piano, but a violin) worth between $40,000 to $70,000. (S/F no. 41) While it is understandable that a debtor in the position of Gouletas (*see* S/F nos. 8-13) may not want to part with such unique collectible items of personal property, his selfish desires did not trump the disclosure obligations imposed upon him under Illinois law. *See Marcus-Rehtmeyer*, 784 F.3d at 441-44.

As far as Gouletas' ownership interest in the Garvey Court Project and NKM Garvey, LLC, the undisputed summary judgment evidence shows Gouletas' fraudulent intent in connection with that entire transaction. (*See* S/F nos. 40-42)

And can there be any explanation other than fraudulent intent when Gouletas placed hundreds of thousands of dollars in Touris' checking accounts? (S/F nos. 48-65) Indeed, when

Gouletas was given the opportunity to come up with some explanation -- any explanation -- for doing what he did, he could provide none:

> Q:   Can you provide the Court with any explanation as to why you did it?
>
> * * *
>
> A:   Not that I know of.
>
> Q:   Can you list any possible reasons as to why you did it?
> A:   No, I don't.

(Px L p. 4) With an $11,550,040.12 judgment against him, and a judgment creditor pursuing his assets pursuant to a Citation proceeding, which had enjoined Gouletas from transferring his assets, is there any doubt as to why Gouletas transferred hundred of thousands of dollars into a checking account in the name of his close personal friend, Touris, and then had Touris write checks from that account for the payment of Gouletas' bills?

Gouletas' misstatements and omissions in his Citation pleadings "were at the very least a result of reckless disregard for the truth, and more likely out of fraudulent intent to deceive creditors . . .." *Ruter*, 558 B.R. at 872. Moreover, Gouletas' complete lack of candor and supposed lack of recollection on numerous subjects for which he most certainly had knowledge and recollection (*see* S/F nos. 58 & 68) "bespoke a reckless indifference to truth, and no more is required for fraudulent intent in bankruptcy." *Skavysh v. Katsman (In re Katsman)*, 771 F.3d 1048, 1050 (7th Cir. 2014).

Based on the undisputed summary judgment evidence, "[t]here can be no other conclusion than that [the debtor] concealed [the debtor's assets] with an intent to hinder, delay or defraud [the judgment creditor]." *Marcus-Rehtmeyer*, 784 F.3d at 443. And the same is true here.

**II.   The Undisputed Summary Judgment Shows That There Is No
Evidence To Support Gouletas' Affirmative Defenses Of Lack
Of Standing And Unclean Hands**

In Gouletas' Answer filed herein, Gouletas asserted two affirmative defenses pertaining to Count Three. In his First Affirmative Defense, Gouletas asserted that "Plaintiff lacks standing to pursue its claim." (Ans. p. 14 ¶1) And in his Third Affirmative Defense, Gouletas asserted that "Plaintiff's claims are barred by the equitable doctrine of unclean hands." (*Id*. p. 15 ¶3) Both affirmative defenses are without merit, and lack any evidentiary support.

There is no evidence to support Gouletas' affirmative defense of Plaintiff's supposed lack of standing. (S/F no.71) In his "standing" affirmative defense, Gouletas argued that "[t]he duly appointed manager of [800 SWC] has not authorized this action." (Ans. p. 14 ¶1) Gouletas testified, however, that he has "no idea" whether Plaintiff has the authority to proceed with this suit, and has "no idea" of any facts to support any claim that Plaintiff did not have the authority to proceed with this suit. (Px J p. 68)

DJV became the manager of 800 SWC on November 16, 2006 pursuant to the terms of a Collateral Pledge and Security Agreement (Px 32-A) (the "Pledge Agreement") executed by (1) the "Borrower", 800 SWC, and (2) the "Pledgors", River City Investors ("RCI") and Gouletas, as the sole members of 800 SWC, in favor of the "Lender", CIB Bank, which was succeeded by DJV. (*Id*. p. 1) As admitted by Gouletas, "[o]n or about November 16, 2006, pursuant to a [Pledge Agreement] delivered to CIB Bank, and later assumed by [DJV] . . ., [DJV] took over control of the voting rights of [800 SWC], and removed Gouletas as the manager of [800 SWC]." (Px B p. 19 ¶3) Indeed, Gouletas admitted that "[DJV] took control of [800 SWC] . . . pursuant to [the Pledge Agreement], <u>which</u> <u>allowed</u> <u>[DJV]</u> <u>to</u> <u>do</u> <u>so</u> once an event of default occurred." (*Id*. p. 20 ¶11 (emphasis added))

Further, pursuant to the Pledge Agreement, RCI and Gouletas agreed that, upon default by 800 SWC in repayment of the full amount of financial obligations owed by 800 SWC, CIB (now DJV) could serve as the manager of 800 SWC unless and until the full amount of the financial obligations owed by 800 SWC to DJV was paid in full. (Px 32-A ¶¶1.1, 4.1, 4.8, 4.12 & 6.1) It is undisputed that, to date, the full amount of the financial obligations owed by 800 SWC to DJV has not been paid in full. (Px L ¶73)

In addition, Gouletas and the other previous member of 800 SWC, RCI, previously contested the ability of DJV to serve as the manager of 800 SWC. (S/F no. 74) As concluded by Bankruptcy Judge Jacquelyn P. Cox in her Order denying Gouletas' prior Motion on the authority of DJV to continue as manager of 800 SWC:

> The argument [by RCI and Gouletas] that [DJV] has not acquired all of the manager-member power is without basis. Paragraph 1.1 of the Pledge Agreement [Px 32-A] states "Pledgor [*i.e.*, Gouletas and RCI] assigns, pledges and grants to Lender [DJV] a security interest in and lien upon all of Pledgor's right, title and interest in and to Pledgor's interest in Borrower [800 SWC] (including without limitation, Pledgor's rights to [v]ote . . .". [DJV] succeeded to all, 100%, of the Pledgor's [*i.e.*, Gouletas and RCI's] interest.

(Px T p. 6)

In his other affirmative defense pertaining to Count Three, Gouletas argued that Plaintiff has "unclean hands" because "Plaintiff has pursued its claims in this Court and in the Circuit Court of Cook County with the knowledge that it did not have authority to do so." (Ans. p. 15 ¶3) As discussed above, Plaintiff has the authority to pursue with its claims herein and had the authority to pursue its claims in the Circuit Court. (*See* S/F nos. 72-74)

Further, the equitable doctrine of unclean hands is not available as an affirmative defense to a debtor in an action for denial of discharge under §727(a). *See Giant Eagle, Inc. v. Monus (In*

10

*re Monus),* 176 Fed. Appx. 494, 496 (6th Cir. 2006); *Carroll v. Prosser (In re Prosser)*, 2012

Bankr. LEXIS 5872, *57-63 (Bankr. V.I. Dec. 20, 2012). Indeed,

> unlike an inquiry under a dischargeability proceeding under §523,
> which seeks to vindicate only a single creditor's debt, the inquiry in
> a proceeding under §727(a) is directed toward protecting the
> integrity of the bankruptcy system by denying discharge to debtors
> who engage in objectionable conduct that is of a magnitude and
> effect broader and more pervasive than a fraud on a single creditor.

*Giant Eagle*, 167 Fed. Appx. at 496 (approving holding by Bankruptcy Appellate Panel).

And in any event, there is no evidence to support Gouletas' affirmative defense of

unclean hands. (S/F no. 76) During his deposition herein, Gouletas admitted that he has "no idea"

whether Plaintiff has unclean hands (S/F no. 76), and has "no idea" of any facts to support a

claim that Plaintiff has unclean hands. (Px J p. 68)

### <u>Conclusion</u>

Based on the foregoing, Plaintiff 800 South Wells Commercial LLC respectfully requests

that the Court grant summary judgment against Defendant/Debtor Nicholas S. Gouletas as to

Count Three of Plaintiff's Adversary Complaint, and thereafter enter a final judgment denying

Gouletas a bankruptcy discharge pursuant to 11 U.S.C. §727(a)(2)(A). A proposed form of order

is submitted for the Court's consideration.

Respectfully submitted,

ARMSTRONG LAW FIRM

Dated: August 21, 2017.          By     */s/F. Dean Armstrong*
                                    F. Dean Armstrong
                                 1324 Dartmouth Road
                                 Flossmoor, IL  60422
                                 708/798-1599
                                 Fax: 708/798-1597
                                 Email: armstronglaw@sbcglobal.net

                                 *Attorneys for 800 South Wells*
                                 *Commercial LLC*

11

**<u>Certificate of Service</u>**

The undersigned certifies that a true and correct copy of the foregoing pleading was served upon all parties receiving CM/ECF noticing on this 21st day of August, 2017.


_/s/F. Dean Armstrong_
F. Dean Armstrong