# Px 32-A

## COLLATERAL PLEDGE AND SECURITY AGREEMENT
### (800 South Wells Commercial, LLC)

THIS COLLATERAL PLEDGE AND SECURITY AGREEMENT (this "Agreement"), dated as of March ___, 2001, is made by and among Nicholas S. Gouletas and River City Investors, LLC, a Michigan limited liability company (collectively, "Pledgor"), CIB Bank, an Illinois banking corporation ("Lender"), and 800 South Wells Commercial, LLC, an Illinois limited liability company ("Borrower").

WITNESETH:

WHEREAS, Pledgor holds one hundred percent (100%) of the membership interests of Borrower;

WHEREAS, Lender has agreed to make or cause to be made a letter of credit loan to Borrower in an aggregate amount of Five Million Nine Hundred Thousand and No/100 Dollars ($5,900,000.00) (the "Loan"), which Loan is made pursuant to a Loan Agreement by and between Lender and Borrower of even date herewith (the "Loan Agreement"), is evidenced by a Letter of Credit Demand Note made by Borrower for the benefit of Lender (the "Note"), and secured, inter alia, by a Second Leasehold Mortgage and Assignment of Leases and Rents and Security Agreement of even date, made by Borrower in favor of Lender (the "Mortgage"); the Note, Mortgage and all other documents evidencing, securing, guaranteeing or pertaining to the Loan are collectively referred to as the "Loan Documents"; and

WHEREAS, Borrower is a single asset, special purpose Illinois limited liability company; and

WHEREAS, Pledgor will derive substantial benefit from Lender's making of the Loan; and

WHEREAS, all capitalized terms used in this Agreement which are not specifically defined herein shall have the meaning specified in the Loan Agreement; and

WHEREAS, Pledgor has agreed to pledge and assign to Lender all of Pledgor's right, title and interest in and to Pledgor's interests in Borrower, together with the other collateral hereinafter described.

NOW, THEREFORE, for and in consideration of the premises, the direct benefits to be realized by Pledgor from the Loan, the mutual covenants hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor hereby covenants and agrees with Lender as follows:

1146719



1.    AGREEMENT.

    1.1.    Security Interest.  Pledgor assigns, pledges and grants to Lender a security interest in and lien upon all of Pledgor's right, title and interest in and to Pledgor's interests in Borrower (including without limitation, Pledgor's rights to vote, to interim cash and property distributions, and to liquidating cash and property distributions) together with all proceeds of the same (collectively, the "Collateral") to secure the payment and the performance of the Obligations (as hereinafter defined).

2.    OBLIGATIONS.  The following obligations (the "Obligations") are secured by this Agreement:

    2.1.    All payment and performance duties, liabilities, and obligations of the Borrower to the Lender under the Loan Agreement, the Note, the Mortgage, the Security Agreement, any other Loan Document, or any renewal, extension or amendment of any Loan Document.

    2.2.    All reasonable costs incurred by Lender to obtain, preserve, perfect and enforce this Agreement and security interest, collect the Obligations and maintain, preserve, collect and enforce the Collateral, including but not limited to taxes, assessments, insurance premiums, attorney's fees and legal expenses, and expenses of sale.

3.    PLEDGOR'S REPRESENTATIONS AND WARRANTIES.  Pledgor represents and warrants as follows:

    3.1.    Financing Statements.  Except for a prior assignment to First Lender, without the express prior written consent of Lender, no financing statement covering the Collateral is or will be on file in any public office, except the financing statements relating to this security interest.

    3.2.    Ownership.  Except for a prior assignment to First Lender, pledgor owns the Collateral absolutely and free from any setoff, claim, restriction, lien, security interest, or encumbrance except for the security interest hereunder.

    3.3.    Power and Authority.  Pledgor has full power and authority to make and deliver this Agreement.

    3.4.    Right to Pledge.  Except for a prior assignment to First Lender, pledgor has the unencumbered and unrestricted right to pledge the Collateral and no consent or approval of any governmental authority, or other person that has not been obtained, was or is necessary to the validity of this pledge.

    3.5.    Binding Agreement.  This Agreement constitutes the valid and legally binding obligation of Pledgor, enforceable in accordance with its terms.

4.    PLEDGOR'S COVENANTS.

4.1.   Obligations and This Agreement.   Pledgor shall perform promptly all of its agreements herein or in any other Loan Document.

4.2.   Ownership of Collateral.   Pledgor will not further transfer, sell, assign, or encumber any of the Collateral.

4.3.   Distributions.   If at any time prior to full and final payment of the Obligations, Pledgor shall directly or indirectly receive any distribution of cash or property from Borrower, Pledgor shall hold the same in trust for Lender and, subject to the terms of the Subordination Agreement (as defined in Section 8.15), shall promptly deliver the same to Lender upon demand provided, however, that distributions shall be permitted to Investors as follows:  up to $200,000 in the first calendar year and up to $600,000 in each of the calendar years thereafter.

4.4.   Lender's Costs.   Pledgor, at its expense, jointly and severally, will defend the Collateral against any claims or demands adverse to Lender's security interests and will promptly pay, when due, all taxes or assessments levied against Pledgor on the Collateral. Pledgor, jointly and severally, shall pay all costs necessary to obtain, preserve, perfect, defend and enforce the security interests represented by this Agreement, and preserve, defend, enforce and collect the Collateral.

4.5.   Liens.   Except for a prior assignment to First Lender, pledgor, jointly and severally, shall keep the Collateral free from all liens, claims and encumbrances and security interests except the security interest hereby created and will preserve the priority of all security interests in the Collateral in favor of Lender therefor.  Lender shall have no duty to preserve such security, but may do so at the expense of Pledgor, without waiving Pledgor's default.

4.6.   Modification of Collateral.   Without the express prior written consent of Lender, which consent shall not be unreasonably withheld, Pledgor shall not agree to any modification of any of the terms of the articles of organization, operating agreement or any other instrument, agreement or document pursuant to which Borrower is created, organized or operated (collectively, "Operating Documents").

4.7.   Right of Lender to Notify Others.   At any time upon an Event of Default hereunder, Lender may notify persons obligated on any Collateral to make payments directly to Lender and Lender may take control of all proceeds of any Collateral.  Until Lender elects to exercise such rights, Pledgor, as trustee for the benefit of Lender, shall collect and enforce all payments owed on Collateral.

4.8.   Power of Attorney.   Pledgor appoints Lender as its or his attorney-in-fact with full power in Pledgor's name and behalf to do every act which Pledgor is obligated to do or may be required to do hereunder; however, nothing in this paragraph shall be construed to obligate Lender to take any action hereunder.  The power of attorney hereby created is a power coupled with an interest, and shall be irrevocable.  Notwithstanding the foregoing, Lender shall not exercise the foregoing power of attorney unless (i) an Event of Default shall have occurred hereunder or under any other Loan Document, or (ii)

Pledgor shall have failed to perform any act which Pledgor is obligated to do or may be required to do hereunder within five (5) days of written notice from Lender to Pledgor.

4.9.    <u>Waivers by Pledgor</u>.  Pledgor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any event of default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations and any part thereof may be accelerated, extended or renewed one or more times by Lender in its discretion, without notice to Pledgor (including notice of intent to accelerate and notice of acceleration).

4.10.    <u>Other Parties and Other Collateral</u>.    The obligations of Pledgor under this Agreement shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against any other person or entity (including Borrower) nor against the security or liens or encumbrances available to Lender or any of its successors and assigns. Pledgor hereby waives any right to require that an action be brought against any other person or entity or to require that resort be had to any security or to any balance of any account or credit on the books of Lender in favor of any other person or entity prior to any exercise of rights or remedies hereunder.  No renewal or extension of or any other indulgence with respect to the Obligations or any part thereof, no release of any security, no release of any person (including any maker, endorser, guarantor or surety) liable on the Obligations, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Obligations or any security therefor or guaranty thereof or under this Agreement shall in any manner impair or affect the rights of Lender under the law, hereunder or under any other agreement pertaining to security for the Obligations.  Pledgor waives any right to the benefit of or to require or control application of any other security or proceeds thereof, and agrees that Lender shall have no duty or obligation to Pledgor to apply to the Obligations any such other security or proceeds thereof.

4.11.    <u>Indemnification</u>.  In any suit, proceeding or action brought by or against Lender relating to the Collateral, Pledgor, jointly or severally, will save, indemnify and hold Lender harmless from and against all expense, loss or damage suffered by reason of any defense, setoff, counterclaim, recoupment or reduction of liability whatsoever of any obligor thereunder, arising out of or relating to a breach by Pledgor of any obligation thereunder or arising out of or relating to any other agreement, indebtedness or liability at any time owing to or in favor of such obligor or its successors from Pledgor, and all such obligations of Pledgor shall be and shall remain enforceable against and only against Pledgor and shall not be enforceable against Lender.  The foregoing joint and several obligation of Pledgor to indemnify Lender shall not extend to any suit, proceeding, or action arising out of Lender's gross negligence or willful misconduct.

4.12.    <u>Operating Documents Amendment</u>.  Notwithstanding anything in the Operating Agreements to the contrary, in the event that Lender notifies the Borrower that pursuant

to the terms hereof, it is entitled to become a Member, Lender shall be automatically admitted as a Member of the Borrower.

4.13.   Managing Member and Special Managing Member. Notwithstanding anything in the Operating Agreements to the contrary, the Pledgor hereby covenant and agree as follows: (i) Investors shall not be allowed to become the Managing Members and/or Special Managing Member unless and until Investors has executed and delivered to Lender a Limited Guaranty (Recourse Obligations) in form and substance reasonably satisfactory to Lender and Subordination and/or Guaranty of Fees due to Investor under the Operating Agreements and/or any other document in connection with the Project (as that term is defined in the Loan Agreement); (ii) any pledge, note, debt and/or indebtedness (collectively "Subordinate Debt") owed to Investor by Borrower and/or any other Pledgor, as a member of Borrower, is subordinate and junior to Lender's rights hereunder and Investor will not exercise any of the rights under any such Subordinate Debt unless and until all of the Obligations are paid in full and this Pledge is released; and (iii) Investor will not accept or collect any amounts due under or with respect to such Subordinate Debt unless and until all of the Obligations are paid in full and this Pledge is released and any such amounts collected and/or received by Investor in connection with such Subordinated Debt shall be held by Investor in trust for Lender and paid over to Lender immediately upon receipt thereof.

5.   BORROWER'S COVENANT.   Borrower covenants and agrees not to make any distribution of cash or property, directly or indirectly to Pledgor until such time as all the Obligations are fully and finally satisfied.

6.   RIGHTS AND POWERS OF LENDER.

6.1.   Voting Rights.   After an Event of Default and for so long as any of the Obligations remain unpaid, Pledgor covenants and agrees that it will not, without the prior written consent of Lender, exercise any voting rights under the Operating Documents and (i) Lender may, upon written notice to Pledgor of its intention to do so, exercise all voting rights, and all other ownership or consensual rights with respect to the Collateral, but under no circumstances is Lender obligated by the terms of this Agreement to exercise such rights, and (ii) in addition to any other grants hereunder, Pledgor hereby appoints Lender Pledgor's true and lawful attorney-in-fact and irrevocable proxy to vote the Collateral in any manner Lender deems advisable for or against all matters submitted or which may be submitted to a vote of members of Borrower. The power of attorney granted hereby is coupled with an interest and shall be irrevocable for so long as any of the Obligations remain unpaid.

6.2.   Prior to an Event of Default and for so long as any of the Obligations remain unpaid, Pledgor may exercise all voting rights, and all other ownership or consensual rights with respect to the Collateral; provided, however, Pledgor covenants and agrees that it will not, without the prior written consent of Lender (i) vote or take any consensual action with respect to the Collateral which would materially and adversely affect the

Collateral or Lender's secured interest therein, including without limitation, accept any distributions from Borrower, (ii) vote or take any consensual action with respect to Borrower's governing documents; provided, however, that Lender shall not unreasonably withhold consent to any proposed action, (iii) cause, permit, or allow any assets of Borrower to be leased, sold, conveyed, pledged, hypothecated, transferred, or otherwise encumbered or disposed of except as permitted under the Loan Documents, or (iv) cause, permit or allow Borrower (a) to issue any additional membership interests or (b) to be dissolved or liquidated, or to acquire, be acquired by, merged, or consolidated into or with any other person or entity, except as permitted under those certain Loan Documents of even date between Borrower and Lender.

6.3.   Security Agreement.  This Agreement shall constitute a security agreement under the Uniform Commercial Code as in effect in the State of Illinois ("UCC").

7.   DEFAULT.

7.1.   Events of Default.  The following shall be deemed "Events of Default" hereunder:

(a)   The failure of Borrower (i) to make any payment of interest under the Note on the date when due, (ii) to make any payment of principal under the Note when due, or (iii) to make any other payment under the Loan Documents within ten (10) days of the date when due or after demand (or such shorter period as may be expressly provided for herein or therein);

(b)   default in the performance or observance of the terms and conditions of Pledgor's covenants in Sections 4.2, 4.3, 4.5, 4.6, 6.1 or 6.2 hereof;

(c)   default in the performance or observance of the other terms and conditions herein not described in Section 7.1(b) above, and the failure to cure such default within ten (10) days after written notice thereof;

(d)   Any representation or warranty made under this Agreement shall be incorrect or misleading in any material respect when made;

(e)   An Event of Default shall occur under the Loan Agreement, the Mortgage or any other Loan Document;

(f)   A final judgment or judgments for the payment of money (which payment has not been insured against) aggregating in excess of $50,000.00 is or are outstanding against any Pledgor, or against any of the properties or assets of any Pledgor, and any one of such judgments has remained unpaid, unvacated, unbonded or unstayed by appeal or otherwise for a period of thirty (30) days from the date of its entry;

(g)   A proceeding is instituted by a party other than Borrower, any Pledgor or any Affiliate of Borrower or any Pledgor seeking a decree or order for relief in respect of any Pledgor in any case under the Federal bankruptcy laws, as now or hereafter constituted, or any other applicable Federal or State bankruptcy,

insolvency or other similar law now or hereafter in effect, or for the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of any Pledgor, or for any substantial part of the property of any Pledgor, or for the winding-up or liquidation of the business or affairs of any Pledgor, and such proceeding shall remain undismissed or unstayed and in effect for a period of sixty (60) consecutive days, or a decree or order shall be entered granting the relief sought in such proceeding;

(h)     Any Pledgor shall generally fail to pay, or admit an inability to pay, its debts as they become due, or shall voluntarily commence proceedings under the Federal bankruptcy laws, as now or hereafter constituted, or any bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of such Pledgor or shall take any action consenting to or in furtherance of any of the foregoing; or

(i)     Levy on, seizure or attachment of the Collateral by any person or entity.

7.2.    <u>Remedies of Lender Upon Default</u>.  When an Event of Default occurs, and at any time thereafter, Lender without notice or demand may declare the Obligations in whole or part immediately due and may enforce payment of the same and exercise any rights under the UCC, rights and remedies of Lender under this Agreement, or otherwise.   The proceeds of any disposition of Collateral after an Event of Default, shall be applied to the Obligations in such order and in such manner as Lender in its discretion shall decide. Lender may transfer, sell, or otherwise dispose of the Collateral or any portion of the Collateral at a public or private sale or make other commercially reasonable disposition of the Collateral or any portion thereof after ten (10) days notice to Pledgor, and Lender may purchase the Collateral or any portion thereof at any public or private sale, and any such sale made in good faith by Lender shall be deemed to be "commercially reasonable".  Failure of Lender to exercise any of the above rights, powers and remedies ("<u>Rights</u>") in the event of any default shall not constitute a waiver of the right to exercise the same in connection with such default or any subsequent default.  The aforementioned Rights are cumulative of each other; the resort to any Right or Rights shall not prevent the concurrent or subsequent employment of any other appropriate Rights and no single or partial exercise of any Right shall exhaust it, or preclude any other or further exercise thereof, and every Right may be exercised at any time and from time to time.  No failure by Lender to exercise, and no delay in exercising, any Right, shall be deemed a waiver or modification of any Right.

8.      <u>GENERAL</u>.

8.1.    <u>Parties Bound</u>.  Lender's rights and interests hereunder shall inure to the benefit of its successors and assigns, and in the event of any assignment or transfer of any of the Obligations or the Collateral, Lender thereafter shall be fully discharged from any responsibility with respect to the Collateral so assigned or transferred, but Lender shall retain all rights and powers hereby given with respect to any of the Obligations or

Collateral not so assigned or transferred. All representations, warranties, and agreements of Pledgor are joint and several, and all shall be binding upon the personal representatives, heirs, successors and assigns of Pledgor. Time is of the essence of this Agreement.

8.2.    Waiver. No delay of Lender in exercising any power or right shall operate as a waiver or modification thereof; nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right. No waiver by Lender of any right hereunder or of any default by Pledgor shall be binding upon Lender unless in writing, and no failure by Lender to exercise any power or right hereunder or waiver of any default by Pledgor shall operate as a waiver of any other or further exercise of such right or power or of any further default.

8.3.    Agreement Continuing. This Agreement shall constitute a continuing agreement, applying to all future as well as existing transactions, whether or not of the character contemplated at the date of this Agreement, and if all transactions between Lender and Pledgor shall be closed at any time, shall be equally applicable to any new transactions thereafter. Provisions of this Agreement, unless by their terms exclusive, shall be in addition to other agreements between the parties.

8.4.    Governing Law; Forum. The validity, enforcement and interpretation of this Agreement shall for all purposes be governed by and construed in accordance with the laws of the State of Illinois, without regard to its conflicts of law principles, and applicable United States federal law, and is intended to be performed in accordance with, and only to the extent permitted by, such laws. All obligations of Pledgor hereunder are payable and performable at the place or places where the obligations of the Borrower under the Loan Documents are payable and performable. Pledgor hereby irrevocably submits generally and unconditionally for Pledgor and in respect of Pledgor's property to the non-exclusive jurisdiction of any local court, or any United States federal court, sitting in the County of Cook, State of Illinois, or in the District of Columbia over any suit, action or proceeding arising out of or relating to this Agreement. Pledgor hereby irrevocably waives, to the fullest extent permitted by law, any objection that Pledgor may now or hereafter have to the laying of venue in any such court and any claim that any such court is an inconvenient forum. Pledgor hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all services of process in any such suit, action or proceeding in any local court, or any United States federal court, sitting in the County of Cook, State of Illinois, or in the District of Columbia, may be made by certified or registered mail, return receipt requested, directed to Pledgor at its address stated in Section 8.12, and service so made shall be complete five (5) business days after the same shall have been so mailed. Nothing herein shall affect the right of Lender to serve process in any manner permitted by law or limit the right of Lender to bring proceedings against Pledgor in any other court or jurisdiction.

8.5.    Waiver of Jury Trial. TO THE MAXIMUM EXTENT PERMITTED BY LAW, PLEDGOR AND LENDER HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY ACTION, CAUSE OF ACTION, CLAIM, DEMAND OR PROCEEDING ARISING UNDER OR WITH RESPECT TO THIS AGREEMENT, OR

IN ANY WAY CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE DEALING OF PLEDGOR AND LENDER WITH RESPECT TO THIS AGREEMENT, OR THE TRANSACTIONS RELATED HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE.   TO THE MAXIMUM EXTENT PERMITTED BY LAW, PLEDGOR AND LENDER HEREBY AGREE THAT ANY SUCH ACTION, CAUSE OF ACTION, CLAIM, DEMAND OR PROCEEDING SHALL BE DECIDED BY A COURT TRIAL WITHOUT A JURY AND THAT LENDER OR PLEDGOR MAY FILE AN EXECUTED COPY OF THIS AGREEMENT WITH ANY COURT OR OTHER TRIBUNAL AS WRITTEN EVIDENCE OF THE CONSENT OF EACH OF PLEDGOR AND LENDER TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.  IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY PLEDGOR, AND PLEDGOR HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY, THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED BY PLEDGOR OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

8.6.   Additional Waivers.   PLEDGOR EXPRESSLY AND UNCONDITIONALLY WAIVES, IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT BY LENDER ON THIS AGREEMENT, ANY AND EVERY RIGHT IT OR HE MAY HAVE TO (I) INJUNCTIVE RELIEF; (II) INTERPOSE ANY COUNTERCLAIM THEREIN UNLESS UNDER THE APPLICABLE RULES OF COURT, SUCH COUNTERCLAIM MUST BE ASSERTED IN SUCH PROCEEDING, AND (III) HAVE THE SAME CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR PROCEEDING.

8.7.   Modifications.   No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by Pledgor and Lender.  No modification or limitation may be accomplished by course of conduct, usage of trade, or by the law merchant.

8.8.   Severability.  In the event any provision (or any part of any provision) contained in this Agreement shall for any reason be finally held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision, or application of the provision to other circumstances) but this Agreement shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein, but only to the extent it is invalid, illegal or unenforceable.

8.9.   <u>Financing Statement</u>.   A carbon, photographic or other reproduction of this Agreement or any financing statement covering the Collateral shall be sufficient as a financing statement.

8.10.   <u>Further Assurances</u>.   Pledgor shall execute and deliver, or cause to be executed and delivered, such further assurances, including but not limited to financing statements, as lender from time to time may reasonable request, to effect the provisions of and to carry out the intent of this Agreement.

8.11.   <u>Limitations of Law</u>.   If any law prohibits or limits any charge or expense provided for in this Agreement in connection with any Obligations secured hereby, such charge or expense will not be made or incurred in connection with such Obligations beyond the limits permitted by such law.

8.12.   <u>Notices</u>.   All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (i) delivered in person, (ii) three (3) business days after deposit in a regularly maintained receptacle of the United States mail as registered or certified mail, postage prepaid, (iii) when received if sent by private courier service, or (iv) on the day on which the party to whom such notice is addressed refuses delivery by mail or by private courier service and (b) addressed as follows:

| | |
|---|---|
| To Debtor: | c/o Invsco Group, Ltd.<br>505 North Lake Shore Drive<br>Suite 214<br>Chicago, IL 60611<br>Attn: Nicholas S. Gouletas<br>Facsimile: (312) 621-4165 |
| With a copy to: | Horwood Marcus & Berk<br>180 North LaSalle Street<br>Suite 3700<br>Chicago IL 60601<br>Attn: Kenneth W. Bosworth<br>Facsimile: (312) 606-3232 |
| To River City Investors: | Seyburn, Kahn, Ginn, Bess, Deitch and  Serlin<br>2000 Town Center, Suite 1500<br>Southfield, Michigan  48075-1195<br>Attn:  Marc Seyburn, Esq.<br>Facsimile: (248) 353-3727 |
| To Lender: | CIB Bank<br>900 E. Higgins<br>Elk Grove Village, IL 60007<br>Attn: John Bean, President<br>Facsimile:  (847) 437-7556 |

With a copy to:          McBride Baker & Coles
                         500 West Madison Street
                         40th Floor
                         Chicago, IL 60661
                         Attn: Francis L. Keldermans
                         Facsimile: (312) 993-9350

or to each such party at such other addresses as such party may designate in a written notice to
the other parties given at least ten (10) days prior to the date such change becomes effective.

8.13.    Interpretation.  The term "Pledgor" and "Pledgors" as used in this Agreement
shall refer to all such persons jointly and severally, and all promises, agreements,
covenants, waivers, consents, representations, warranties and other provisions in this
Agreement are made by and shall be binding upon each and every such undersigned
person, jointly and severally.  The term "Lender" shall be deemed to include any
subsequent holder(s) of the Note.  Whenever the context of any provisions hereof shall
require it, words in the singular shall include the plural, words in the plural shall include
the singular, and pronouns of any gender shall include the other genders.  Captions and
headings in this Agreement are for convenience only and shall not affect the construction
of the Agreement.  All references in this Agreement to Schedules, Articles, Sections,
Subsections, paragraphs and subparagraphs refer to the respective subdivisions of this
Agreement, unless such reference specifically identifies another document.  The terms
"herein," "hereof," "hereto," "hereunder" and similar terms refer to this Agreement and
not to any particular Section or subsection of this Agreement.  The terms "include" and
"including" shall be interpreted as if followed by the words "without limitation."  All
references in this Agreement to sums denominated in dollars or with the symbol "$" refer
to the lawful currency of the United States of America, unless such reference specifically
identifies another currency.  For purposes of this Agreement, "person" or "persons" shall
include firms, associations, partnerships (including limited partnerships), joint ventures,
trusts, corporations, limited liability companies, and other legal entities, including
governmental bodies, agencies, or instrumentalities, as well as natural persons.  Unless
the context indicates otherwise, definitions in the UCC apply to words and phrases in this
Agreement; if UCC definitions conflict, Chapter 9 definitions apply.

8.14.    Counterparts.  This Agreement may be executed in one or more counterparts, each
of which shall be deemed an original.  Said counterparts shall constitute but one and the
same instrument and shall be binding upon, and shall inure to the benefit of, each of the
undersigned individually as fully and completely as if all had signed one instrument.  The
joint and several liability of each Pledgor hereunder shall not be affected by the failure of
any other Pledgor to execute any or all of such counterparts.

8.15.    Subordination.  The indebtedness secured hereby, but not the security interest
created hereby or, except as provided in the Subordination Agreement referenced below,
the rights and remedies set forth herein, is subordinated to the prior payment in full of the
indebtedness evidenced and secured by those certain loan documents (the "Senior Loan

Documents") evidencing and/or securing the loan made by Parkway Bank and Trust Company ("Senior Lender") to Borrower in the stated amount of $18,500,000.00 and this instrument is made expressly subject to all terms of that certain Subordination Agreement by and among Lender and Senior Lender dated as of even date herewith and recorded in the Records of the Recorder of Cook County, Illinois.

8.16.   Acknowledgement.    The Borrower acknowledges and, to the extent required under the Operating Documents or otherwise, consents to the security interests pledged, assigned and granted by this Agreement. The Borrower further agrees that at all times prior to the payment in full of the Obligations Borrower shall note the security interests pledged, assigned and granted by this Agreement in the books and records of the Company pertaining to the Collateral, and that Lender shall have the continuous right, during normal business hours and upon reasonable notice to the Company, to inspect and copy the books and records of the Company pertaining to the Collateral.

8.17.   Distributions.    Except as provided in Section 4.3 herein, prior to full and final payment of the Obligations, Borrower shall not make any distribution of cash or property to Pledgor.  If for any reason any such distribution shall be made, Borrower shall make any such distribution for the benefit of Pledgor directly to Lender, except as provided in Section 4.3 herein..

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Pledgor, Borrower and Lender have caused this Agreement to be executed as of the day and year first above written.

**LENDER:**

CIB BANK, an Illinois banking company

By:_____(SEAL)
Name:_____
Title:_____

**PLEDGOR:**

_____
        Nicholas S. Gouletas

RIVER CITY INVESTORS, LLC, a Michigan limited liability company

By:_____
Name:_____
Title:_____

**BORROWER:**

800 South Wells Commercial, LLC, an Illinois limited liability company

By:_____
        Nicholas S. Gouletas, its managing member

IN WITNESS WHEREOF, Pledgor, Borrower and Lender have caused this Agreement to be executed as of the day and year first above written.

**LENDER:**

CIB BANK, an Illinois banking company

By: _Michael L Paoletti_ (SEAL)
Name: _MICHAEL L. PAOLETTA_
Title: _Vice President_

**PLEDGOR:**

_Nicholas S. Gouletas_

RIVER CITY INVESTORS, LLC, a Michigan limited liability company

By: _David C May_
Name: _DAVID C. May_
Title: _Authorized Agent_

**BORROWER:**

800 South Wells Commercial, LLC, an Illinois limited liability company

By: _____
Nicholas S. Gouletas, its managing member

# Px 101

 **Ameritrade**

# Outbound Wire Request (Domestic)

PO Box 2209 ▫ Omaha, NE  68103-2209
Fax:  800-875-5485

*Please be aware that processing of this Letter of Instruction can take up to one business day from receipt. Domestic wires (within the U.S.) can take up to one business day to reach the receiving account. If there are any issues processing the wire, we will contact you via the secured Message Center inside your TD Ameritrade account.*

## 1. DELIVERING ACCOUNT AND WIRE INFORMATION (See section 6 & 7 for clarification)

a. TD Ameritrade Account Number:
nsg031438

b. Title on TD Ameritrade Account:
Nicholas S. Gouletas

c. Name(s) of Sender(s):
Nicholas S. Gouletas

| d. Amount of Wire: | e. Date to Send Wire: |
|---|---|
| $51,323.29 | 09/05/2014 |

## 2. STANDARD AND TWO-BANK WIRE INFORMATION (See section 6 & 7 for clarification)

a. Corresponding Bank:
*(if applicable)*   None

b. Corresponding Bank ABA/Routing Number:

c. Receiving Bank:
The Private Bank, 120 South LaSalle Street, Chicago, Illinois ph: 312-564-2000

d. ABA/Routing Number:
071006486

e. Name(s) on Receiving Bank Account
*(no initials or abbreviations)*   Natel Matschulat

f. Receiving Bank Account Number:
1279157

## 3. ESCROW OR BROKERAGE WIRE INFORMATION (See section 6 & 7 for clarification)

a. Receiving Bank:

b. ABA/Routing Number:

c. Mortgage/Escrow Firm or Brokerage Firm Name:

d. Mortgage/Escrow Firm's or Brokerage Firm's Account Number at Bank:

e. Name(s) on Receiving Mortgage/Escrow or Brokerage Firm Account:
*(no initials or abbreviations)*

f. Receiving Escrow File/Reference/Loan Number or Brokerage Account or Order Number:

## 4. ADDITIONAL INFORMATION

*Please use this section to note any additional reference information provided by the receiving financial institution, such as addresses for Escrow Wires, reference numbers, order or invoice numbers, etc.*

## 5. SIGNATURES

We, the account owners, jointly and severally indemnify and hold harmless TD Ameritrade, Inc. and TD Ameritrade Clearing, Inc. and the divisions thereof, from any claim, suit, demand, loss, or liability as a result of the clearing firm having effected transactions pursuant to instructions given by the individuals listed on this account, except as may be clearly and convincingly proven to have resulted from gross negligence.

| X Primary Account Holder's Signature | Printed Name: Nicholas S. Gouletas | Date: 0 9 0 4 2 0 1 4 |
|---|---|---|
| X Additional Account Holder's Signature | Printed Name: | Date: |
| X Additional Account Holder's Signature | Printed Name: | Date: |

*Original signature required; electronic signatures and/or signature fonts are not authorized.*




Px 101

# Px 120



CASHIER'S CHECK

C 171000166

Date July 31, 2014

Remitter    Nicholas S Goulatas

Pay to the Order of    *Nicholas S Goulatas*
**

$ 1,530.62

ONE THOUSAND FIVE HUNDRED THIRTY DOLLARS AND SIXTY TWO CENTS

dollars

Republic Bank
of Chicago    Memo:

*171000166* *071001180* 171401908*8*

BOFD:71006486 Date:08/01/2014 HostAccount:0000000171401908 Account:171401908 Amount:$1,530.62
Serial:171000166 HostTranCode:431 TranCode:0 TR:71001180 Sequence:7483520690 DbCr:D Canadian:-



873114    1426 800918416>871886486<Chicago

Px 120

# Px 122



CASHIER'S CHECK   C 171000167

Date August 01, 2014   2-118/710

Remitter   Nicholas Gouletas

Pay to the
Order of   *Nicholas Gouletas*   $ 10,000.00

TEN THOUSAND DOLLARS AND ZERO CENTS   dollars

Republic Bank
of Chicago   MEMO:

⑆171000167⑆ ⑈071001180⑈ 171401908⑈

BOFD:21000089 Date:08/04/2014 HostAccount:0000000171401908 Account:171401908 Amount:$10,000.00
Serial:171000167 HostTranCode:481 TranCode:0 TR:71001180 Sequence:2706825920 DbCr:D Canadian:-



112518312 80012814 IL116 3048134 BIC



Px 122

# Px 127



CASHIER'S CHECK                                                    C 171000175

                                              Date August 22, 2014          P-116710

Remitter    Nicholas Gouletas

Pay to the   *Nicholas Gouletas*
Order of     **                                          $ 1,500.00

ONE THOUSAND FIVE HUNDRED  DOLLARS AND  ZERO  CENTS                  dollars

Republic Bank
of Chicago    Memo:                          Thomas A. Izquino

⑈171000175⑈ ⑇071001180⑇ 171401908⑈

BOFD:71006486 Date:08/25/2014 HostAccount:0000000171401908 Account:171401908 Amount:$1,500.00
Serial:171000175 HostTranCode:481 TranCode:0 TR:71001180 Sequence:2735927400 DbCr:D Canadian:-



Px127

# Px 128



## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY        **Customer Copy**

**CASHIER'S CHECK**                                        9488626643

08/22/2014
Void after 7 years

**Remitter:**   NICHOLAS S GOULETAS

$** 2,500.00 **

ay To The   NICHOLAS S. GOULETAS
rder Of:

lemo ----------------------------------------            Drawer  **JPMORGAN CHASE BANK, N.A.**
ote: For information only. Comment has no effect on bank's payment.       **NON NEGOTIABLE**

PX 128

# Px 139



**Certificate Number**

ZQ0008714

COMMON STOCK

PAR VALUE $1.00

THIS CERTIFIES THAT

**CIB MARINE BANCSHARES, INC.**
INCORPORATED UNDER THE LAWS OF THE STATE OF WISCONSIN

NICHOLAS J. CORTINA TAS

is the owner of

FULLY-PAID AND NON-ASSESSABLE SHARES OF THE COMMON STOCK OF

**CIB MARINE BANCSHARES, INC.** (hereinafter called the "Company"), transferable on the books of the Company in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate and the shares represented hereby, are issued and shall be held subject to all of the provisions of the Articles of Incorporation, as amended, and the By-Laws, as amended, of the Company (copies of which are on file with the Company and with the Transfer Agent), to all of which each holder, by acceptance hereof, assents. This Certificate is not valid unless countersigned and registered by the Transfer Agent and Registrar.

Witness the facsimile seal of the Company and the facsimile signatures of its duly authorized officers.

President

General Counsel & Secretary

8680984O

DATED: 06-JUN-2014
COUNTERSIGNED AND REGISTERED:
COMPUTERSHARE TRUST COMPANY, N.A.
TRANSFER AGENT AND REGISTRAR

By

AUTHORIZED SIGNATURE

COMMON STOCK

CUSIP 12542J 10 3
SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFICATE IS TRANSFERABLE IN
CANTON, MA AND NEW YORK, NY

Shares

**100924**
**100924**
**100924**
**100924**
**100924**

SECURITY 1

SEE DEFINITIONS ON REVERSE

# Px 176

**Fill in this information to identify your case and this filing:**

Debtor 1    **Nicholas S. Gouletas**
First Name    Middle Name    Last Name

Debtor 2
(Spouse if filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF ILLINOIS

Case number    **16-01335**

☐ Check if this is an amended filing

# Official Form 106A/B
## Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1   Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2
■ Yes. Where is the property?

| | | |
|---|---|---|
| 1.1 | **What is the property?** Check all that apply. | |
| **Mavro Lithari** | ■ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | |
| **Anavyssos** | ☐ Land | Current value of the entire property? |
| City    State    ZIP Code | ☐ Investment property | Current value of the portion you own? |
| | ☐ Timeshare | **Unknown**            **Unknown** |
| | ☐ Other | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| | **Who has an interest in the property?** Check one. | |
| **Greece** | ☐ Debtor 1 only | |
| County | ☐ Debtor 2 only | |
| | ☐ Debtor 1 and Debtor 2 only | ☐ Check if this is community property (see instructions) |
| | ■ At least one of the debtors and another | |

Other information you wish to add about this item, such as local property identification number:

- Inherited jointly with sister, Evangeline Goueltas, upon passing of their mother approx. 8 years ago.
- As of 9/2014 there were outstanding real estate taxes owed, the current status of the real estate taxes is unknown to the Debtor.

2   Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.............................................=>    **$0.00**

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2016 Best Case, LLC—www.bestcase.com    Best Case Bankruptcy


Px176

Debtor 1   **Nicholas S. Gouletas**                                Case number *(if known)*   **16-01335**

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| | | | | |
|---|---|---|---|---|
| 3.1 | Make **Lexus** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D Creditors Who Have Claims Secured by Property* | |
| | Model **LS 430** | ☐ Debtor 1 only | | |
| | Year **2006** | ☐ Debtor 2 only | | |
| | Approximate mileage **approx. 81,000** | ☐ Debtor 1 and Debtor 2 only | Current value of the entire property? | Current value of the portion you own? |
| | Other information | ■ At least one of the debtors and another | | |
| | - Debtor drives, but is titled to Realty Services Inc. only | ☐ Check if this is community property (see instructions) | **Unknown** | **Unknown** |
| | - Location: 111 E. Chestnut Garage | | | |
| | - Subject to Turnover Order No. 1 dated August 12, 2015 in favor of 800 South Wells Commercial, LLC | | | |
| | - NADA Official Older Used Car Guide for January through April 2016 indicates the following values: | | | |
| | Clean Trade-In $13,825; Clean Loan $12,450; Clean Retail $15,225 | | | |
| | - However, vehicle has an issue with the rear-end and has some body damage | | | |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.......................................................................=>**                **$0.00**

**Part 3:**   Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?                        Current value of the portion you own?
                                                                                                         Do not deduct secured claims or exemptions

6. **Household goods and furnishings**
   *Examples* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes   Describe ...

Software Copyright (c) 1996-2016 Best Case LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor 1   **Nicholas S. Gouletas**                                    Case number *(if known)*   **16-01335**

IN RESIDENCE: minimal only.
- Any household goods and furnishings of value all belong to
non-filing spouse and predate the 2001 marriage or were
purchased by non-filing spouse post-2001.
IN OFFICE: memoribilia, photographs, prints, small statues, desk,
table with four chairs, bookcases, books, misc.
IN POSSESSION OF CARLOS CASTILLO believed being stored at
412 S. Dearborn, Chicago, IL:
- Wirlitzer jukebox unknown value, estimate is $10k
- Mechanical violin/piano (like a player piano but a violin) unknown
value, estimate is $40k-$70k
- desk unknown value, estimate is $300
- Carlos Castillo is asserting this is collateral for his loan. Debtor
is unaware of any documented security interest in favor of Carlos
Castillo.                                                                          **Unknown**

7. **Electronics**
   *Examples* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
   including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe ....

                          cellphone                                                **$100.00**

8. **Collectibles of value**
   *Examples* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
   other collections, memorabilia, collectibles
   ☐ No
   ■ Yes. Describe ....

                          included in answer to #6 above.                          **Unknown**

9. **Equipment for sports and hobbies**
   *Examples* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
   musical instruments
   ☐ No
   ■ Yes. Describe ....

                          2 gazelle ellipticals, non-motorized.                    **Unknown**

10. **Firearms**
    *Examples* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes. Describe ....

11. **Clothes**
    *Examples* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes. Describe ....

                          Usual and ordinary men's clothing including business and casual
                          attire, shoes and accessories. Approximately 5-6 years old.          **$400.00**

12. **Jewelry**
    *Examples* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ■ Yes. Describe ....

| Debtor 1 | **Nicholas S. Gouletas** | | Case number *(if known)*  **16-01335** |
|---|---|---|---|

**20.  Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them

■ No
☐ Yes. Give specific information about them.
  Issuer name.

**21.  Retirement or pension accounts**
*Examples* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No
☐ Yes. List each account separately.
  Type of account              Institution name.

**22.  Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes .......................              Institution name or individual.

**23.  Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes ............  Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes ................  Institution name and description. Separately file the records of any interests 11 U.S.C. § 521(c)

**25.  Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
☐ No
■ Yes. Give specific information about them...

|  |  |
|---|---|
| **Nicholas S. Gouletas Special Trust dated June 11, 2001 - pursuant to Turnover Order No. 2 dated 8/12/2015, the Debtor was required to provide 800 South Wells Commercial, LLC with a signed Notice of Termination of the 2006 Restatement of the Nicholas S. Gouletas Special Trust dated June 11, 2011. - Debtor's current interest in the trust, if any, is unknown.** | **Unknown** |

**26.  Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes. Give specific information about them...

**27.  Licenses, franchises, and other general intangibles**
*Examples* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
☐ No
■ Yes. Give specific information about them...

| | |
|---|---|
| **Broker's License** | **$0.00** |

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions |
|---|---|

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

Debtor 1    **Nicholas S. Gouletas**                                    Case number *(if known)*   **16-01335**

**28  Tax refunds owed to you**
☐ No
■Yes  Give specific information about them, including whether you already filed the returns and the tax years......

> **Returns for tax years ending December
> 31, 2013; December 31, 2014 and
> December 31, 2015 are being
> prepared. It is unknown at this time
> whether or not the Debtor will be
> entitled to a refund.**                                              Unknown

**29  Family support**
*Examples*: Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
☐ No
☐ Yes  Give specific information......

**30  Other amounts someone owes you**
*Examples*: Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security
benefits, unpaid loans you made to someone else
☐ No
☐ Yes  Give specific information...

> **Pending Renewed Motion for Attorneys' Fees and Costs filed
> in Case No. 12-cv-01110 in the U.S. District Court for the
> District of Nevada.
> On 1/26/2016, and order was entered granting the motion in
> favor of American Invsco Corporation and Nicholas S.
> Gouletas and against Frank Taddeo and Amelia Taddeo in
> the amount of $2,473.60 in attorney's fees and $1,339.30 in
> costs.**                                                            Unknown

**31  Interests in insurance policies**
*Examples*: Health, disability, or life insurance, health savings account (HSA), credit, homeowner's, or renter's insurance
☐ No
☐ Yes  Name the insurance company of each policy and list its value

| Company name | Beneficiary | Surrender or refund value |
|---|---|---|
| **Medicare** | n/a | **$0.00** |

**32  Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
someone has died
☐ No
☐ Yes  Give specific information.

**33  Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples*: Accidents, employment disputes, insurance claims, or rights to sue
☐ No
☐ Yes  Describe each claim.........

**34  Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
☐ No
☐ Yes  Describe each claim.........

**35  Any financial assets you did not already list**
☐ No
☐ Yes  Give specific information.

Official Form 106A/B                                    Schedule A/B: Property                                          page 6

Debtor 1    **Nicholas S. Gouletas**                                    Case number *(if known)*    **16-01335**

|  | icash.illinois.gov shows Nicholas Gouletas is entitled to $10-$100 from Great West Life Insurance and Annuity Company | **Unknown** |

36  Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.................................................................................................................    **$1,672.01**

**Part 5:**  Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37  Do you own or have any legal or equitable interest in any business-related property?
☐ No  Go to Part 6
■ Yes  Go to line 38

Current value of the portion you own? Do not deduct secured claims or exemptions

38  Accounts receivable or commissions you already earned
☐ No
■ Yes. Describe....

see attached list.                                                                                **Unknown**

39  Office equipment, furnishings, and supplies
*Examples*  Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
☐ No
■ Yes. Describe....

see attached list.                                                                                **Unknown**

40  Machinery, fixtures, equipment, supplies you use in business, and tools of your trade
☐ No
■ Yes. Describe....

see attached list.                                                                                **Unknown**

41  Inventory
☐ No
■ Yes. Describe....

see attached list.                                                                                **Unknown**

42  Interests in partnerships or joint ventures
☐ No
■ Yes. Give specific information about them.....................
Name of entity                                            % of ownership

see attached list.                                                    %                          **Unknown**

Debtor 1    **Nicholas S. Gouletas**                                                    Case number *(if known)*    **16-01335**

---

43   **Customer lists, mailing lists, or other compilations**
■ No
☐ Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

     ■ No
     ☐ Yes   Describe .....

44   **Any business-related property you did not already list**
  ☐ No
  ■ Yes  Give specific information.........

          **see attached list.**                                                    **Unknown**

45   **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here**..................................................................................................    **$0.00**

**Part 6:**   Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In
If you own or have an interest in farmland  list it in Part 1

46   **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    ■ No  Go to Part 7
    ☐ Yes  Go to line 47

**Part 7:**   Describe All Property You Own or Have an Interest In That You Did Not List Above

53   **Do you have other property of any kind you did not already list?**
    *Examples*  Season tickets  country club membership
    ■ No
    ☐ Yes  Give specific information.........

54   **Add the dollar value of all of your entries from Part 7. Write that number here** .....................................    **$0.00**

**Part 8:**   List the Totals of Each Part of this Form

| | | |
|---|---:|---:|
| 55   **Part 1: Total real estate, line 2** ............................................................................................................. | | **$0.00** |
| 56   Part 2: Total vehicles, line 5 | $0.00 | |
| 57   Part 3: Total personal and household items, line 15 | $1,500.00 | |
| 58   Part 4: Total financial assets, line 36 | $1,672.01 | |
| 59   Part 5: Total business-related property, line 45 | $0.00 | |
| 60   Part 6: Total farm- and fishing-related property, line 52 | $0.00 | |
| 61   Part 7: Total other property not listed, line 54                    + | $0.00 | |
| 62   **Total personal property.** Add lines 56 through 61... | **$3,172.01**   Copy personal property total | **$3,172.01** |
| 63   **Total of all property on Schedule A/B**  Add line 55 + line 62 | | **$3,172.01** |

# Px 177

## Transaction History

**Customer:** DOROTHEA A TOURIS
**Account:** IL Checking #XXXXX2032

*required field

| Current Balance ? | Present Balance ? | Available Less Overdraft ? | Available Balance ? | Calendar |
|---|---|---|---|---|
| $9,736.54 | $9,736.54 | $9,736.54 | $445,329.91 | |

* denotes end of day balance

| Date Posted | Tran Type | Description | $ Debits(-) | $ Credits(+) $ | Balance |
|---|---|---|---|---|---|
| 02/18/2015 | Check | CHECK # 123 | -7,000.00 | | 9,736.54 * |
| 02/17/2015 | Wire Transfer | FEDWIRE CREDIT VIA: THE PRIVAT | | 15,730.00 | 16,736.54 * |
| 01/23/2015 | Interest | INTEREST PAYMENT | | 0.01 | 1,006.54 * |
| 12/19/2014 | Interest | INTEREST PAYMENT | | 0.01 | 1,006.53 * |
| 11/24/2014 | Interest | INTEREST PAYMENT | | 0.01 | 1,006.52 * |
| 10/31/2014 | Misc. Credit | SERVICE FEE REVERSAL | | 25.00 | 1,006.51 * |
| 10/22/2014 | Interest | INTEREST PAYMENT | | 0.01 | 981.51 * |
| 09/24/2014 | Misc. Credit | SERVICE FEE REVERSAL | | 25.00 | 981.50 * |
| 09/22/2014 | Fee | SERVICE FEE | -25.00 | | 956.50 * |
| 09/22/2014 | Interest | INTEREST PAYMENT | | 0.01 | 981.50 |
| 09/08/2014 | ACH Debit | CITI CARD ONLINE PAYMENT 13 | -26.15 | | 981.49 * |
| 08/21/2014 | Fee | SERVICE FEE | -25.00 | | 1,007.64 * |
| 08/21/2014 | Interest | INTEREST PAYMENT | | 0.01 | 1,032.64 |
| 08/20/2014 | ACH Debit | American Express ACH PMT | -148.00 | | 1,032.63 * |
| 08/01/2014 | Misc. Credit | SERVICE FEE REVERSAL | | 25.00 | 1,180.63 * |
| 07/22/2014 | Fee | SERVICE FEE | -25.00 | | 1,155.63 * |
| | | | | | Older |

$15,730.00
$15.50
$15,000.00
$31,145.00 TOTAL

