**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| NICHOLAS S. GOULETAS, | ) | No. 16-01335 |
| | ) | |
|    Debtor. | ) | Hon. Timothy A. Barnes |
| | ) | |
| 800 SOUTH WELLS COMMERCIAL LLC, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 1:16 ap 141 |
| | ) | |
| NICHOLAS S. GOULETAS, | ) | |
| | ) | |
|    Debtor/Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEBTOR'S MEMORANDUM OF LAW
AND ARGUMENT IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

This is the Reply by Plaintiff 800 South Wells Commercial LLC ("Plaintiff" or "800 SWC") to the Memorandum of Law and Argument in Opposition to Plaintiff's Motion for Summary Judgment (D.N. 70) ("Mem.") submitted by Debtor/Defendant Nicholas S. Gouletas ("Debtor" or "Gouletas"). As shown by the following, (1) the facts set forth in Plaintiff's Statement of Undisputed Facts that were not properly controverted by Gouletas should be deemed admitted; (2) Gouletas has failed in his summary judgment burden to prove the affirmative defense of lack of standing; and (3) the overwhelming summary judgment evidence shows that Gouletas concealed his property with the intent to hinder, delay or defraud 800 SWC, a judgment creditor of Gouletas. Accordingly, summary judgment against Gouletas as to Count Three of Plaintiff's Adversary Complaint for Denial of Discharge pursuant to 11 U.S.C. §727(a)(2)(A) should be granted.

## I. The Facts Set Forth In Plaintiff's Statement Of Undisputed Facts Not Properly Controverted By Gouletas Should Be Deemed Admitted

Virtually all of the Responses by Gouletas in Debtor's Response to Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment (D.N. 69) ("Resp.") are evasive and not in compliance with the requirements set forth in Rule 7056-2.[1] Pursuant to Rule 7056-2(B), the facts set forth in Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment (D.N. 52-1) ("S/F") not properly controverted by Gouletas should be deemed admitted.

Under Rule 7056-2(A)(2), Gouletas, as the party opposing a motion for summary judgment, was required to submit "a concise response to the movant's statement of facts" comprised of

    (a)    a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon; and

    (b)    a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavit, parts of the record, and other supporting materials relied upon . . ..

Further, under Rule 7056-2(B), "[a]ll material facts set forth in the statement required by the moving party will be deemed to be admitted unless <u>controverted</u> by the statement of the opposing party." (*Id*. (emphasis added))

The Local Court Rules on summary judgment practice within the Federal Courts of the Northern District of Illinois, like Rule 7056-2 for the Bankruptcy Courts, require the nonmoving party (here, Gouletas) "to admit or deny each factual statement proffered by [the movant]." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Indeed,

---

[1] References to "Rule __" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Illinois. *See* Rule 1000-1(14).

> if a material fact is not disputed (or if there is no evidence that controverts the fact), the [trial] court is entitled to know that upfront, without first having to examine citations to evidence having only marginal bearing on the question.

*Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). Moreover, a summary judgment practice rule such as Rule 7056-2

> is not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted. It is also not satisfied by citations to the record that support legal argument rather than controvert material facts.

*Bordelon*, 233 F.3d at 528. Accordingly, "[a]ny facts included in a party's statement of facts that are not properly controverted by the opposing party are deemed admitted." *Caterpillar Inc. v. Estate of Lacefield-Cole*, 520 F.Supp.2d 989, 995 (N.D. Ill. 2007). *See, also, Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993) ("the failure to contest a party's statement of uncontested facts is treated as a binding admission of the truth of those facts").

While a party responding to a motion for summary judgment may raise objections to the summary judgment evidence, the nonmovant still must admit or deny each proffered undisputed fact. *See Cracco*, 559 F.3d at 630 & 632. *See, also, Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 818 (7th Cir. 2004) (a nonmoving party's response that the factual allegations in a moving party's statement of material facts were irrelevant does not excuse the nonmoving party from indicating whether it admitted or denied the allegations). Moreover, this Court is not "required to wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon*, 233 F.3d at 529. *See, also, Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Here, Gouletas failed to provide clear and equivocal denials of the factual propositions set forth in Plaintiff's Statement of Undisputed Facts. Rather, Gouletas routinely asserted vague and unsupported objections, along with qualifications of questionable relevance, but all the while

3

failed to deny the substance of the proffered fact. Overall, Gouletas' statements in response to Plaintiff's Statement of Undisputed Facts are "so full of argument, evasion and improper denials that [they] defeat[] the whole point of [Rule 7056-2] -- to identify just what facts are actually in dispute." *Bordelon*, 233 F.3d at 528.

In numerous Responses, Gouletas does not deny the statement of fact, but simply states that "to the extent Plaintiff's characterization herein differs in any way from [the cited supporting summary judgment evidence], Debtor denies all such differences." But what claimed differences? Gouletas would impose upon this Court the task of sifting through all of the cited summary judgment evidence to see how, if at all, the asserted statement of fact differs from the supporting evidence. *See Bordelon*, 333 F.3d at 529. And if there are any differences, Gouletas does not assist the Court in a determination as to whether any such differences make any difference to the task at hand -- is the proffered fact undisputed?

Moreover, in no instances are any of the differences between the proffered fact and the supporting summary judgment evidence material on the issue of the correctness of the asserted fact. For example, in Response to S/F No. 18, Gouletas stated: "Debtor's Answer (Px. A p. 8) speaks for itself; and to the extent Plaintiff's characterization herein differs in any way from Debtor's Answer, Debtor denies all such differences." (Resp. p. 6 No. 18) And the differences that Gouletas denies? In two instances, the word "Plaintiff" in the Answer (Px A) is substituted for the word "800 SWC" in the asserted fact, which, of course (and as admitted by Gouletas), mean the same thing. (*See* Resp. p. 1 No. 1)

The Responses by Gouletas to Plaintiff's Statement of Undisputed Facts Nos. 6-7, 9-26, 28-34, 36-68 & 70-77 are evasive and not in compliance with the requirements set forth in Rule

4

7056-2. Accordingly, pursuant to Rule 7056-2(B), the facts set forth in the above statement of facts were not properly controverted by Gouletas, and therefore should be deemed admitted.

## II. Gouletas Failed In His Summary Judgment Burden To Prove The Affirmative Defense Of Lack Of Standing

In Gouletas' Answer filed herein (Px A), Gouletas asserted that "Plaintiff lacks standing to pursue its claim." (Px A p. 14 ¶1) Upon 800 SWC's "no evidence" summary judgment challenge to Gouletas' standing affirmative defense (*see* D.N. 52-2 pp. 9-10), the burden was upon Gouletas to come forward with competent summary judgment evidence to prove his affirmative defense of lack of standing. *See Simpson v. Safeguard Props., LLC*, 2017 U.S. Dist. LEXIS 159667 at *22 & 24-25 (N.D. Ill. Sept. 28, 2017) (upon a plaintiff's motion for summary judgment challenging an affirmative defense, the defendant's failure to come forward with sufficient summary judgment evidence to support the affirmative defense requires dismissal of the affirmative defense). *See, also, Myers v. Harold*, 2017 U.S. Dist. LEXIS 135522 at *43 (N.D. Ill. Aug. 24, 2017) (same); *McRaith v. Burns & Wilcox, Ltd.*, 2010 U.S. Dist. LEXIS 23419 at *7-10 (N.D. Ill. 2010) (same); *Springfield Oil Servs. v. Mermelstein*, 914 F.Supp. 258, 264 (N.D. Ill. 1996) (same). Gouletas, however, did not proffer sufficient summary judgment evidence to prove his affirmative defense as required by Rule 7056-2(A)(2)(b). Indeed, through his failure to deny, Gouletas has admitted that:

> (71) There is no evidence to support Gouletas' affirmative defense of Plaintiff's supposed lack of standing. In his "standing" affirmative defense, Gouletas argued that "[t]he duly appointed manager of [800 SWC] has not authorized this action." (Ans. p. 14 ¶1) Gouletas testified, however, that he has "no idea" whether Plaintiff has the authority to proceed with this suit, and has "no idea" of any facts to support any claim that Plaintiff did not have the authority to proceed with this suit. (Px J p. 68)

5

(Resp. p. 28 No. 71) Accordingly, summary judgment against Gouletas on his affirmative defense of lack of standing should granted.

Further, pursuant to Rule 7056-2(A)(2)(b), Gouletas was required to submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon . . .." Here, the only additional facts submitted by Gouletas were set forth at p. 31 of his Response as additional fact "D-1", which simply refers to an attached Exhibit D-1. That exhibit, however, is not only an incomplete document, but also a document not authenticated by any summary judgment evidence.

Accordingly, Debtor's Statement of Additional Fact D-1 is not supported by any summary judgment evidence as required by Rule 7056-2(A)(2)(b). *See Simpson, supra* at \*20-21 (the Local Rules on summary judgment practice within the Northern District of Illinois require that the parties cite to the required statement of facts); *Mervyn v. Nelson Westerberg, Inc.*, 76 F.Supp.3d 715, 720 (N.D. Ill. 2014) ("the value of the party's Local Rule 56.1 statements and responses is largely lost if those materials are not cited in the briefs"). And even if Debtor's Statement of Additional Fact D-1 were not denied by Plaintiff, Gouletas still failed to comply with Rule 7056-2(A)(2)(b), and failed in his summary judgment burden to prove his affirmative defense that Plaintiff supposedly lacks standing to pursue this suit.

### A. Gouletas Has Failed To Show That DJV Lacked Legal Authority To Direct Plaintiff To Bring This Action

Gouletas argues that "Plaintiff has failed to establish the legal authority of DJV to direct Plaintiff to bring this action." (Mem. p. 2) Not only did Gouletas fail to list any additional facts to support his affirmative defense as required by Rule 7056-2(A)(2)(b), his argument is lacking in legal support as well. Accordingly, Gouletas' undeveloped legal argument has been waived.

6

*See Simpson, supra*, at *21-22. Moreover, "illegality" is an affirmative defense under Fed.R.Civ.P. 9(a)(1) which Gouletas failed to plead in his Answer, and thus has waived any "illegality" affirmative defense. *See BancFlorida v. De Pasquale (In re De Pasquale)*, 166 B.R. 663, 670-71 (Bankr. N.D. Ill. 1994) ("Failure to plead an affirmative defense results in waiver of that defense"). But in any event, Gouletas has failed in his burden to prove "illegality" or "unlawfulness" as an affirmative defense.

Without citation to any authority, and in an apparent attempt to escape in a cloud of confusion, Gouletas argues:

> Plaintiff fails to cite to any provision of the note reflecting Debtor's alleged indebtedness or of the Second Mortgage that would support the relief Plaintiff seeks . . .. Accordingly, as a matter of law, Plaintiff has failed to demonstrate that anything about the "Second Mortgage" can serve as grounds for the summary judgment Plaintiff seeks . . ..

(Mem. p. 3) Gouletas has not explained, however, why 800 SWC would need to rely on any provision of any note (let alone a "note reflecting Debtor's alleged indebtedness"), or rely upon any provision of the Second Mortgage, "to support the relief Plaintiff seeks", or to "serve as grounds for the summary judgment Plaintiff seeks . . .."

And in any event, 800 SWC need not rely upon any provision of either the underlying note signed by 800 SWC, or the Second Mortgage, to prove its claims for denial of Gouletas' bankruptcy discharge pursuant to 11 U.S.C. §727(a)(2)(A). Indeed, Gouletas has admitted that it is "undisputed" that "in March of 2005 the CIB loan and mortgage were acquired by [DJV] and that by the end of 2005, the Second Mortgage was in default with an outstanding balance of approximately $10 million." (Mem. p. 2) It was 800 SWC's undisputed default under the Second Mortgage loan, with the undisputed unpaid indebtedness still owed by 800 SWC to DJV (S/F

7

No. 73; Resp. p. 29 No. 73 (not denied by Gouletas)) that gave DJV the right to take over management and control of 800 SWC pursuant to the terms of the Pledge Agreement.

Next, Gouletas argues that, as a "procedural prerequisite[]" for DJV "lawfully exercising the membership and voting rights" of 800 SWC, DJV had to provide "notice" that it was exercising those rights, which "procedural prerequisite[]" 800 SWC did not prove in its Motion for Summary Judgment. (Mem. pp. 2-5) Once again, Gouletas did not provide any additional facts to support this defense through the required Rule 7056-2(A)(2)(b) "statement . . . of any additional facts . . .." And, once again, Gouletas' arguments are not supported by the facts and the law.

First, any claimed "lack of notice" argument cannot be asserted in good faith in compliance with Fed.R.Civ.P. 11(b)(3). As the Court will recall, Gouletas recently requested, and was granted, an extension of the discovery cut-off date (*see* D.N. 66) to submit a request for production of documents to Plaintiff. In response to Gouletas' document request, on November 3, 2017, Plaintiff's counsel forwarded to counsel for Gouletas a copy of the Notice attached hereto as Px 187 (*see* Plaintiff's Statement of Additional Facts, No. 78), which is the Notice that Gouletas now claims doesn't exist. There is no good faith basis for Gouletas to assert a "lack of notice" argument.

Further, although Gouletas argues that 800 SWC did not offer any evidence that DJV "lawfully" took over control of 800 SWC (Mem. pp. 4-5), Gouletas skirts the issue as to whether 800 SWC had the burden to prove any such "lawful" assumption of control by DJV in the first instance. Indeed, pursuant to Fed.R.Civ.P. 9(a)(1), 800 SWC was not required to plead that it had the "capacity to sue" or the "authority to sue".

8

Moreover, in Plaintiff's Complaint, Plaintiff specifically alleged in ¶34 that "[a]ll conditions precedent to recovery by Plaintiff have been performed or have occurred." (D.N. 1 p. 11 ¶34) Gouletas' sole response to that allegation was "Denied" (Px A p. 12 ¶34), without listing any claimed condition precedent (such as lack of notice) that supposedly had not been met, as Gouletas was required to do under Fed.R.Civ.P. 9(c)[2]. As concluded by the Seventh Circuit, "if a defendant does not deny specifically and with particularity, as required by Fed.R.Civ.P. 9(c), the satisfaction of [all conditions precedent to suit], the defendant cannot later assert that a condition precedent to the lawsuit has not been met." *Liberles v. County of Cook*, 709 F.2d 1122, 1125 (7th Cir. 1983). Accordingly, Gouletas' failure to allege, with particularity, lack of notice in his answer precludes Gouletas from arguing lack of notice in opposition to 800 SWC's motion for summary judgment. *See Keybank N.A. v. Hamrick*, 576 Fed. Appx. 884, 888-89 n. 8 (11th Cir. 2014). *See, also, Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1115 (7th Cir. 1992); *Newsub Magazine Servs. LLC v. Heartland Direct, Inc.*, 2004 U.S. Dist. LEXIS 4121, *11-12, 2004 WL 524689 (N.D. Ill. Mar. 16, 2004).[3]

In addition, not only did Gouletas waive any notice requirement under the Pledge Agreement (*see* Px 32-A p. 4 §4.9), upon default of the loan obligations owed to the Lender (now, DJV), notice to Gouletas was not required in order for the "Lender" (*i.e.,* DJV) to

---

[2] "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed.R.Civ.P. 9(c).

[3] *See, also, Jackson v. Seaboard C.L.R. Co.*, 678 F.2d 992, 1009 (11th Cir. 1982) ("under [Fed.R.Civ.P. 9(c)], if a party disagrees with a general averment that the conditions precedent have been met, that party may raise the issue with a specific and particular denial. If the party does not deny the satisfaction of the conditions precedent specifically and with particularity, however, the allegations are assumed admitted and cannot later be attacked"); *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1224-225 (11th Cir. 2010) (upon a plaintiff's allegation in compliance with the requirements of Fed.R.Civ.P. 9(c), when a defendant does not deny satisfaction of all conditions precedent with particularity, plaintiff's allegations are assumed admitted and may not be attacked later); *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 21 (1st Cir. 2001) (if a defendant does not deny satisfaction of conditions precedent with particularity, then plaintiff's allegations are assumed admitted and defendant may not assert later that a condition precedent has not been met).

"exercise any . . . rights and remedies under this Agreement, or otherwise." (*Id.* p. 7 §7.2) Further, upon default of the loan obligations, no notice to Gouletas was required in order for the Lender (DJV) to become Gouletas' "true and lawful attorney-in-fact and irrevocable proxy to vote" Gouletas' membership interests in 800 SWC "in any manner [DJV] deems advisable . . .." (*Id*. p. 5 §6.1(ii)) In short, although notice was, in fact, provided to Gouletas (*see* S/F No. 78; Px 187), upon default on repayment of the loan obligations owed to the Lender (DJV), there was no notice requirement before the Lender (DJV) could take control of the management and operations of 800 SWC.

 Finally, Gouletas did not deny (and therefore admitted) the following facts:

(18) . . . By the end of 2005, the Second Mortgage loan was in default, with the amount owed by 800 SWC to DJV totaling approximately $10,000,000. (Ans. ¶10)

(Resp. p. 6 No. 18)

(72) DJV became the manager of 800 SWC on November 16, 2006 pursuant to the terms of a Collateral Pledge and Security Agreement (Px 32-A) (the "Pledge Agreement") executed by (1) the "Borrower", 800 SWC, and (2) the "Pledgors", River City Investors ("RCI") and Gouletas, as the sole members of 800 SWC, in favor of the "Lender", CIB Bank, which was succeeded by DJV. (*Id*. p. 1) As admitted by Gouletas, "on or about November 16, 2006, pursuant to a [Pledge Agreement] delivered to CIB Bank, and later assumed by DJV . . ., DJV took over control of the voting rights of [800 SWC], and removed Gouletas as the manager of [800 SWC]." (Px B p. 19 ¶3) Further, Gouletas admitted that "DJV took control of [800 SWC] . . . pursuant to [the Pledge Agreement], <u>which allowed DJV to do so</u> once an event of default occurred." (*Id*. p. 20 ¶11 (emphasis added))

(Resp. pp. 28-29 No. 72)

(73) Further, pursuant to the Pledge Agreement, RCI and Gouletas agreed that, upon default by 800 SWC in repayment of the full amount of financial obligations owed by 800 SWC, CIB (now DJV) could serve as the manager of 800 SWC unless and until the full amount of the financial obligations owed by 800 SWC to DJV

10

> was paid in full. (Px 32-A ¶¶1.1, 4.1, 4.8, 4.12 & 6.1) It is undisputed that, to date, the full amount of the financial obligations owed by 800 SWC to DJV has not been paid in full. (Px L ¶73)

(Resp. p. 29 No. 73) Accordingly, Gouletas has admitted that DJV lawfully took over control of the management and operations of 800 SWC; Gouletas has failed in his summary judgment burden to prove otherwise.

### B. Gouletas Has Failed To Establish That Limitations Has Run On Any Management And Control Rights Of DJV Under The Pledge Agreement

Without any reference to the required "statement . . . of any additional facts that require the denial of summary judgment" (*see* Rule 7056-2(A)(2)(b)), and without citation to any legal authority, Gouletas argues that 800 SWC has failed to establish the existence of a "legally enforceable debt" that would accord DJV the right to control the affairs of 800 SWC pursuant to the terms of the Pledge Agreement. (Mem. p. 5) Once again, Gouletas seeks to shift the burden to 800 SWC to prove that which was never previously challenged, and that which is undisputed to this very day: "to date, the full amount of the financial obligations owed by 800 SWC to DJV has not been paid in full." (Resp. p. 29 ¶73) Simply, Gouletas has failed in his summary judgment burden to prove his affirmative defense of lack of standing. *See Simpson, supra* at *22 & 24-25.

Further, Gouletas did not plead limitations as an affirmative defense, as he was required to do by Fed.R.Civ.P. 8(c)(1). "Failure to plead an affirmative defense results in a waiver of that defense." *BancFlorida*, 166 B.R. at 670-71. And even if the affirmative defense of limitations could be asserted by Gouletas at this late stage, he failed in his burden to prove that limitations has, in fact, run. Indeed, by Gouletas' failure to deny S/F No. 73, Gouletas has admitted that:

> (73)    Further, pursuant to the Pledge Agreement, RCI and Gouletas agreed that, upon default by 800 SWC in repayment of the full

>   amount of financial obligations owed by 800 SWC, CIB (now
>   DJV) could serve as the manager of 800 SWC <u>unless</u> <u>and</u> <u>until</u> <u>the</u>
>   <u>full</u> <u>amount</u> <u>of</u> <u>the</u> <u>financial</u> <u>obligations</u> <u>owed</u> <u>by</u> <u>800</u> <u>SWC</u> <u>to</u> <u>DJV</u>
>   <u>was</u> <u>paid</u> <u>in</u> <u>full</u>. (Px 32-A ¶¶1.1, 4.1, 4.8, 4.12 & 6.1) It is
>   undisputed that, to date, the full amount of the financial obligations
>   owed by 800 SWC to DJV has not been paid in full. (Px L ¶73)

(Resp. p. 29 No. 73 (emphasis added))

Pursuant to the Pledge Agreement, the "Collateral" -- the membership units and voting rights of Gouletas and RCI in 800 SWC -- was "to secure the payment and the performance of the Obligations . . .." (Px 32-A p. 2 §1.1) The "Obligations" owed to the Lender, DJV, pursuant to the Pledge Agreement included:

> 2.1.   All payment and performance duties, liabilities, and obligations of the Borrower [800 SWC] to the Lender [DJV] under the Loan Agreement, the Note, the Mortgage, the Security Agreement, and any other Loan Document, or any renewal, extension or amendment of any Loan Document.
>
> 2.2.   All reasonable costs incurred by Lender [DJV] to obtain, preserve, perfect and enforce this Agreement and security interest, collect the Obligations and maintain, preserve, collect and enforce the Collateral, including but not limited to taxes, assessments, insurance premiums, attorney's fees and legal expenses, and expenses of sale.

(Px 32-A p. 2 §2) Gouletas has offered no evidence (and, in fact, no such evidence exists) that the Obligations have been paid in full to DJV. Indeed, it is undisputed that the Obligations have not been fully paid to DJV. (*See* Resp. p. 29 No. 73)

Finally, under the Pledge Agreement, the "Lender's" (DJV's) rights of management and control over the affairs of 800 SWC are not limited to any set period of time after default. Rather, pursuant to §6.1 of the Pledge Agreement, those rights extend from and after "an Event of Default <u>and</u> <u>for</u> <u>so</u> <u>long</u> <u>as</u> <u>any</u> <u>of</u> <u>the</u> <u>Obligations</u> <u>remain</u> <u>unpaid</u> . . .." (Px 32-A p. 5 §6.1 (emphasis added); *see, also, id*. p. 7. §7.2) Quite simply, Gouletas has not shown, and cannot

show, that DJV no longer has any management and control rights over 800 SWC pursuant to the terms of the Pledge Agreement.

### III. The Overwhelming Summary Judgment Evidence Establishes That Gouletas Concealed His Property With Intent To Hinder, Delay Or Defraud 800 SWC, A Judgment Creditor Of Gouletas

Without citation to any counter-statement of facts set forth in the required Rule 7056-2(A)(2)(b) statement of additional facts, and again without citation to any legal authority, Gouletas makes a feeble attempt to claim that he was "confused" and "lacking in understanding", and that "his memory was not so good", when he repeatedly and consistently failed to disclose his ownership interest in numerous valuable assets, and made misrepresentations about those assets, and then repeatedly and consistently made false statements under oath when asked about his assets. There are no cases, and there should not be any cases, that would allow a debtor such as Gouletas, upon the Record before this Court, to skirt his or her obligations of an oath through the simple expediency of a claim -- and a claim without proof -- that he or she was repeatedly, and for such a long period of time, "confused" or "lacking in understanding". Fortunately for our equitable system of Bankruptcy, Gouletas "cannot defeat summary judgment simply by raising a 'metaphysical doubt' about his intent." *In re Kontrick*, 295 F.3d 724, 737 (7th Cir. 2002)

Moreover, what was Gouletas "confused" about when he parked over $825,000 of his funds in two checking accounts held in the name of his close personal friend, Dorothea Touris, and then had his friend write checks from those accounts for the payment of Gouletas' bills, all in violation of the state court Citation? (*See* Resp. pp. 17-26 Nos. 52-63) The only thing Gouletas was confused about was whether he would get caught engaging in his money laundering scheme.

And what is Gouletas' explanation for engaging in that money laundering scheme? Can anyone argue with a straight face that Gouletas was simply "confused" or "lacking in

13

understanding" when he so cavalierly disregarded the obligations of his oath during his deposition in this case? (*See* Resp. pp. 23-25 Nos. 58-59) Conduct (as revealed by the Summary Judgment Record) speaks louder than words, and certainly louder than unsubstantiated words put into a pleading after Gouletas has gotten caught. The obligations of an oath are serious, which obligations Gouletas did not take seriously.

The privilege of a bankruptcy discharge and the accompanying "fresh start" is supposed to be limited to "the honest but unfortunate debtor." *In re Scott,* 172 F.3d 959, 966 (7th Cir. 1999) *citing Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). *See, also, Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011); *Village of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The Summary Judgment Record shows, beyond all reasonable doubt, that Gouletas is far from the "honest but unfortunate debtor" entitled to the privilege of a bankruptcy discharge of his debts by this Honorable Court.

## Conclusion

Based on the foregoing, as well as the arguments and authorities set forth in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (D.N. 52-2), Plaintiff 800 South Wells Commercial LLC respectfully requests that the Court grant summary judgment against Debtor/Defendant Nicholas S. Gouletas as to Count Three of Plaintiff's Adversary Complaint, and thereafter enter a final judgment denying Gouletas a bankruptcy discharge pursuant to 11 U.S.C. §727(a)(2)(A).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ARMSTRONG LAW FIRM |
| Dated: December 5, 2017. | By     */s/F. Dean Armstrong*       <br>     F. Dean Armstrong<br>23353 S. 88th Avenue<br>Frankfort, IL  60423<br>815/464-3243<br>Email: armstronglaw@sbcglobal.net |
|  | *Attorneys for Plaintiff*<br>*800 South Wells Commercial LLC* |

**Certificate of Service**

The undersigned certifies that a true and correct copy of the foregoing pleading was served upon all parties receiving CM/ECF noticing on this 5th day of December, 2017.

          */s/F. Dean Armstrong*       
F. Dean Armstrong

15