**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| **NICHOLAS S. GOULETAS,** | ) | No. 16-01335 |
| | ) | |
| Debtor. | ) | Hon. Timothy A. Barnes |
| | ) | |
| | ) | |
| **800 SOUTH WELLS COMMERCIAL LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 1:16 ap 141 |
| | ) | |
| **NICHOLAS S. GOULETAS,** | ) | |
| | ) | |
| Debtor/Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT**
**OF UNDISPUTED FACTS IN SUPPORT OF HIS MOTION**
**<u>FOR SUMMARY JUDGMENT ON LIMITATIONS</u>**

Pursuant to Rule 7056-2(A)(2)[1], Plaintiff 800 South Wells Commercial LLC ("800 SWC") submits its Response to Defendant's Statement of Undisputed Facts in Support of his Motion for Summary Judgment on Limitations (D.N. 81) as follows:

(1) Plaintiff, 800 South Wells Commercial LLC ("Plaintiff' or "800 SWC") is an Illinois limited liability company with its principal place of business in Cook County, Illinois. (Dkt. No 1, ¶3)

<u>RESPONSE</u>: Undisputed.

(2) Defendant Nicholas S. Gouletas ("Gouletas") is an individual who resides in Cook County, Illinois. (Dkt. No 1, ¶4)

---

[1] References to "Rule __" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Illinois. *See* Rule 1000-1(14).

RESPONSE: Undisputed.

(3) The records of the Ohio Secretary of State reflect that D.A.N. Joint Venture Ill, L.P. is an Ohio limited partnership ("DJV").

RESPONSE: Undisputed.

(4) This Court has jurisdiction pursuant to 28 U.S.C. §1334. This suit is a core proceeding within the meaning of 28 U.S.C. §157(b). (Dkt. No 1, ¶5)

RESPONSE: Undisputed.

(5) Venue is appropriate in this Court pursuant to 28 U.S.C. §§1408 and 1409. (Dkt. No. 1, ¶6)

RESPONSE: Undisputed.

(6) At all relevant times, Gouletas and River City Investors, LLC ("RCI") have been and remain the sole members of 800 SWC. Prior to November 16, 2006, Gouletas was its Manager. (Exhibits 2, 2-A, 3 & 3-B; Dkt. No. 1, ¶¶4 & 8)

RESPONSE: While it is admitted that prior to November 16, 2006, Gouletas was the Manager of 800 SWC, it is denied that at all relevant times, Gouletas and RCI have been and remain the sole members of 800 SWC. On November 16, 2006, DJV notified Gouletas and RCI that DJV was invoking its rights under the Pledge Agreement (Px 187[2]), which, pursuant to ¶4.12 of the Pledge Agreement, "automatically admitted [the Lender, DJV] as a Member of [800 SWC]." (Px 32-A pp. 4-5 ¶4.12) Accordingly, from and after November 16, 2006, DJV was also a Member of 800 SWC.

---

[2] "Px __" refers to the letter or number of Plaintiff"s Exhibits ("Px") submitted in Plaintiff's Appendix of Exhibits in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment filed herewith.

2

(7) In 1997 the River City Complex, located at 800 South Wells Street, Chicago, Illinois, consisted of: (a) an apartment complex; (b) commercial/retail/office space (the "Commercial Space"); (c) an underground parking garage (the "Parking Garage"); (d) a surface parking Jot; and (e) a marina (Dkt. No. 1, ¶). (For convenience, the Commercial Space and Parking Garage of the River City Complex are hereinafter collectively referred to as the "CSPG")

RESPONSE: Undisputed.

(8) In or about April of 1997, 800 SWC became the owner of the leasehold interests in the CSPG. (Dkt. No. 1, ¶8)

RESPONSE: Undisputed.

(9) As of late 2005, 800 SWC's leasehold interests in CSPG were encumbered by a first leasehold mortgage and a second leasehold mortgage securing loans made to 800 SWC. The second mortgage loan was originally in favor of CIB Bank and later assigned to DJV (the "Second Mortgage"). As additional collateral for the Second Mortgage loan, Gouletas and RCI, as Pledgors, entered into a Collateral Pledge Agreement dated as of "March _ , 2001" (the "Pledge") pledging their membership interests and voting rights in Plaintiff. (Dkt. No. 1, ¶14, Exhibits 2, 2-8, 3 & 3-C) In March, 2005, the Second Mortgage loan, including the Pledge was acquired by DJV. (Dkt. No. 1, ¶10)

RESPONSE: Undisputed.

(10) The Pledge provided, relevant to voting rights in Plaintiff:

> "6.1. Voting Rights. After an Event of Default and for so long as any of the Obligations remain unpaid, Pledgor [Gouletas and RCI] covenants and agrees that it will not, without the prior written consent of Lender [CIB, now DJV], exercise any voting rights under the Operating Documents and (i) Lender may, upon written notice to Pledgor of its intention to do so, exercise all voting rights,

3

>and all other ownership or consensual rights with respect to the Collateral, but under no circumstances is Lender obligated by the terms of this Agreement to exercise such rights, and (ii) in addition to any other grants hereunder. Pledgor hereby appoints Lender Pledgor's true and lawful attorney-in-fact and irrevocable proxy to vote the Collateral in any manner Lender deems advisable for or against all matters submitted or which may be submitted to a vote of members of Borrower, The power of attorney granted hereby is coupled with an interest and shall be irrevocable for so long as any of the Obligations remain unpaid." (Dkt. No. 1, ¶14, Exhibit 2-B & 3-C)

RESPONSE: While it is undisputed that ¶6.1 of the Pledge Agreement sets forth a number of the voting rights in 800 SWC, the Pledge Agreement at ¶1.1 also provides that Gouletas and RCI, collectively as Pledgor, "assigns, pledges and grants to Lender [DJV] a security interest in and lien upon all Pledgor's right, title and interest in and to . . . Pledgor's right to vote [the membership interests of Gouletas and RCI in 800 SWC] . . .." (Px 32-A p. 2 §1.1)

(11)    By the end of 2005, the Second Mortgage loan was in default. (Dkt. No. 1, ¶10. Exhibits 2 & 3)

RESPONSE: Undisputed.

(12)    On November 16, 2006, DJV, as the owner of the Second Mortgage loan, exercised its right under Section 6.1 of the Pledge and took over control of Gouletas and RCI's voting rights in 800 SWC. Thereafter, DJV exercised these voting rights to remove Gouletas as the manager of 800 SWC and install itself as the manager of 800 SWC. (Dkt. No. 1, ¶14; Dkt. No. 69, ¶19; Exhibits 2 & 3)

RESPONSE: Undisputed.

(13)    DJV's Second Mortgage against Plaintiff's CSPG leasehold ownership was foreclosed on July 24, 2007 (Dkt. No. 1, ¶13)

RESPONSE: It is denied that DJV foreclosed its Second Mortgage lien against 800 SWC's leasehold interest in the Commercial Space and the Parking Garage. Rather, on April 24, 2006, the holder of the First Mortgage (WRT-Marc RC, LLC ("WRT"), as assignee of Parkway) filed suit to foreclose its first mortgage lien on the Commercial Space and Parking Garage for nonpayment of the First Mortgage loan. Thereafter, the Commercial Space and Parking Garage were sold at a foreclosure sale on July 24, 2007 for $11,500,000 through a credit bid by WRT, which was not sufficient to cover the over $11,750,000 still owed to WRT as the First Mortgage lien holder. (Px V ¶31) Not a penny of the proceeds from the July 24, 2007 foreclosure sale of the Commercial Space and the Parking Garage (which served as collateral for the Second Mortgage Loan) was paid to reduce the indebtedness owed on the Second Mortgage Loan, and, as a consequence of the foreclosure sale, the Second Mortgage lien holder, DJV, lost the real estate assets that were pledged as collateral for the Second Mortgage Loan. (Px V ¶32)

(14) The Pledge provides for DJV's disposition of its collateral - Gouletas' and RCI's membership interests in 800 SWC - as follows:

> "7.2. Remedies of Lender Upon Default. When an Event of Default occurs, and at any time thereafter, Lender without notice or demand may declare the Obligations in whole or part immediately due and may enforce payment of the same and exercise any rights under the UCC, rights and remedies of Lender under this Agreement, or otherwise. The proceeds of any disposition of Collateral after an Event of Default, shall be applied to the Obligations in such order and in such manner as Lender in its discretion shall decide. Lender may transfer, sell, or otherwise dispose of the Collateral or any portion of the Collateral at a public or private sale or make other commercially reasonable disposition of the Collateral or any portion thereof after ten
> (10) days notice to Pledgor, and Lender may purchase the Collateral or any portion thereof at any public or private sale, and any such sale made in good faith by Lender shall be deemed to be "commercially reasonable". Failure of Lender to exercise any of the above rights, powers and remedies ("Rights") in the event of any default shall not constitute a waiver of the right to exercise the

5

>
> same in connection with such default or any subsequent default. The aforementioned Rights are cumulative of each other; the resort to any Right or Rights shall not prevent the concurrent or subsequent employment of any other appropriate Rights and no single or partial exercise of any Right shall exhaust it, or preclude any other or further exercise thereof, and every Right may be exercised at any time and from time to time. No failure by Lender to exercise, and no delay in exercising, any Right, shall be deemed a waiver or modification of any Right." (Dkt. No. 1, ¶14, Ex. 2-B & 3-C)

RESPONSE: It is denied that the Pledge Agreement provides for DJV's disposition of its collateral. Rather, ¶7.2 of the Pledge Agreement provides that the Lender "may", but is not required to, dispose of the Collateral, and that the "[f]ailure of Lender to exercise any of the above rights . . . shall not constitute a waiver of the right to exercise the same in connection with such default or any subsequent default." (Px 32-A ¶7.2) In addition, there is no provision in the Pledge Agreement which requires that the Lender (now DJV) sell or otherwise dispose of its right to vote the membership interests of Gouletas and RCI, or otherwise sell or dispose of the Collateral, within ten years -- or any other period of time -- from the date of default in the repayment of the Second Mortgage Loan, or the date that the Lender (here DJV) invokes its rights under the Pledge Agreement. (Px 32-A) Simply, there is no requirement in the Pledge Agreement that the Lender (now DJV) must dispose of the Collateral, or that it do so within any particular period of time. Rather, the contractual provisions agreed to by the Pledgors, Gouletas and RCI; the Borrower, 800 SWC; and the Lender (now DJV) were that, after an Event of Default, the conditional assignment of the voting rights to the Lender stayed in effect, and Lender had the right to vote the Collateral, "for so long as any of the Obligations [including the amounts owed under the Second Mortgage Loan] remain unpaid . . . ." (Px 32-A p. 5 ¶6.1; Px W ¶28)

6

(15) To date neither Gouletas nor RCI has received any notice of a public or private sale, or other commercially reasonable disposition of their membership interests in Plaintiff. (Exhibits 2 & 3)

RESPONSE: Plaintiff does not know what notices Gouletas and RCI have received. Further, *see* Plaintiff's Response to No. 14 above, which is hereby incorporated by reference as if set forth verbatim.

(16) Neither Gouletas nor RCI is aware of any other actions, and certainly no commercially reasonable actions, taken by DJV to liquidate the collateral pledged to it under the Pledge. (Exhibits 2 & 3)

RESPONSE: Plaintiff does not know the actions of which Gouletas and RCI are aware. Further, *see* Plaintiff's Response to No. 14 above, which is hereby incorporated by reference as if set forth verbatim.

(17) On March 1, 2016, DJV caused 800 SWC to file an Adversary Complaint against Gouletas, objecting to the dischargeability of its debt and seeking the denial of Gouletas' bankruptcy discharge. (Dkt. No. 1) Defendant filed his answer and affirmative defenses to the Adversary Complaint on May 20, 2016. (Dkt. No. 7)

RESPONSE: Undisputed.

(18) Defendant's First Affirmative Defense asserts that "Plaintiff lacks standing to pursue its claim." (Dkt. No. 7, p. 14, ¶1)

RESPONSE: While Plaintiff admits that Defendant's First Affirmative Defense asserts that "Plaintiff lacks standing to pursue its claim", the Court in its January 10, 2018 Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment ruled that

7

"the Debtor's affirmative defense of lack of standing as set forth in his First Affirmative Defense is limited to the issue of the statute of limitations for enforcement." (D.N. 77 pp. 1-2)

(19)　Gouletas and RCI have unanimously consented to the immediate removal of DJV as Manager of 800 SWC and the election of Kenneth Morgan as Manager of 800 SWC. (Exhibit 4)

RESPONSE: While it is admitted that Gouletas and RCI have violated the Pledge Agreement by purporting to vote their membership interests in 800 SWC without DJV's prior written consent, neither Gouletas nor RCI have any authority to vote their membership interests in 800 SWC and seek the removal of DJV as Manager of 800 SWC and the election of Kenneth Morgan as Manager of 800 SWC. In addition, Plaintiff states as follows:

(a)　Pursuant to ¶6.1 of the Pledge Agreement, the Pledgors, Gouletas and RCI, agreed as follows: "After an Event of Default <u>and for so long as any of the Obligations remain unpaid</u>, Pledgor covenants and agrees that it will not, without the prior written consent of Lender, exercise any voting rights under the Operating Documents . . .." (Px 32-A p. 5 ¶6.1 (emphasis added))

(b)　As of late March of 2005, 800 SWC had defaulted on the repayment of the Second Mortgage Loan, which constituted an "Event of Default" under the Pledge Agreement. (Px 32-A p. 6 ¶7.1(a)) To date, the full amount of the Obligations owed by 800 SWC to DJV pursuant to the Second Mortgage Loan has not been repaid. (Px V ¶62)

(c)　At no time from November 16, 2006 to the present has DJV provided any consent to Pledgors Gouletas and RCI for their authority to exercise any voting rights under the Operating Documents as set forth in ¶6.1 of the Pledge Agreement. (Px V ¶63)

(d)　Further, Pledgors Gouletas and RCI expressly agreed that, upon default by 800 SWC in repayment of the Second Mortgage Loan, Gouletas and RCI appointed the Lender (now DJV) as their "lawful attorney-in-fact and irrevocable proxy to vote [their membership interests in 800 SWC]", with their express acknowledgement that "[t]he power of attorney granted hereby is

8

    coupled with an interest and shall be irrevocable for so long as any of the Obligations [including the amount owed by 800 SWC pursuant to the Second Mortgage Loan] remain unpaid." (Px 32-A p. 5 ¶6.1) It is undisputed that the full amount of the sums owed by 800 SWC under the Second Mortgage Loan (and the Promissory Note Judgment entered thereon) has not been repaid to the Lender, DJV, and at no time from November 16, 2006 to the present, have the irrevocable proxies granted by Gouletas and RCI been released, revoked or terminated in any form or fashion. (Px W ¶64)

 (e) Accordingly, the purported February __, 2018 "Unanimous Written Consent" of Gouletas and RCI (Dx 4 (D.N. 81-4)) whereby Gouletas and DJV purport to vote their membership interests in 800 SWC (a) to remove DJV as manager of 800 SWC; (b) to elect Kenneth B. Morgan as manager of 800 SWC; and (c) to direct 800 SWC to dismiss this Adversary Proceeding against Gouletas (*id.* ¶¶1, 2 & 3) is in violation of the covenants, promises and representations of Gouletas and RCI as set forth in the Pledge Agreement, and is of no force and effect. At all times from November 16, 2006 to the present, DJV has been the duly elected and authorized Manager of 800 SWC. Indeed, as of March 20, 2018, the Illinois Secretary of State Office lists "D.A.N. Joint Venture III LP." as the manager of 800 SWC. (Px 192; Px W ¶65)

 (20) Pursuant to Rule 7056-2(b), Plaintiff states as additional facts that require denial of Defendant's Motion for Summary Judgment, the additional facts, affidavits and exhibits submitted in Plaintiff's Counter-Statement of Facts in Opposition to Defendant's Motion for Summary Judgment on Limitations and in Support of Plaintiff's Cross-Motion for Summary Judgment on Limitations filed herewith, which are hereby incorporated by reference as if set forth verbatim.

Respectfully submitted,

ARMSTRONG LAW FIRM

Dated: March 27, 2018.   By   */s/F. Dean Armstrong*
   F. Dean Armstrong
23353 S. 88th Avenue
Frankfort, IL  60423
815/464-3243
Fax: 815/464-3449
Email: armstronglaw@sbcglobal.net

*Attorneys for 800 South Wells*
*Commercial LLC*

## Certificate of Service

The undersigned certifies that a true and correct copy of the foregoing pleading was served upon all parties receiving CM/ECF noticing on this 27th day of March, 2018.

   */s/F. Dean Armstrong*
   F. Dean Armstrong