UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Nicholas S. Gouletas,<br><br>    Debtor.<br><br>―――――――――――――――――――<br><br>800 South Wells Commercial LLC,<br><br>    Plaintiff,<br>v.<br><br>Nicholas S. Gouletas,<br><br>    Defendant. | Case No. 16bk01335<br><br>Chapter 7<br><br><br><br>Adv. No. 16ap00141<br><br>Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge

## MEMORANDUM DECISION

Before the court are two competing partial motions for summary judgment (together, the "Motions") in the above-captioned adversary proceeding (the "Adversary Case"):

(1) the Defendant's Motion for Summary Judgment [Adv. Dkt. No. 80] (the "Defendant's Motion"), brought by the debtor in the above-captioned bankruptcy case (the "Bankruptcy Case") and the defendant in the Adversary Case, Nicholas S. Gouletas (the "Defendant"); and

(2) the Plaintiff's Response to Defendant's Motion for Summary Judgment on Limitations and Cross-Motion for Summary Judgment on Limitations [Adv. Dkt. No. 86] (the "Plaintiff's Motion"), brought by 800 South Wells Commercial LLC (the "Plaintiff" and collectively with the Defendant, the "Parties").

In the Adversary Case, the Plaintiff, an Illinois limited liability company owned in part by the Defendant, seeks both a determination of nondischargeability with regard to a debt owed by the Defendant to the Plaintiff and a denial of the Defendant's discharge generally. *See* Complaint Objecting to Dischargeability of Debt to Plaintiff and Discharge of Debtor [Adv. Dkt. No. 1] (the "Complaint").

The Defendant has answered the Complaint, *see* Nicholas S. Gouletas' Answer and Affirmative Defenses to Complaint Objecting to Dischargeability of Debt to Plaintiff and Discharge of Debtor [Adv. Dkt. No. 7] (the "Answer"), and in so doing, has asserted as an affirmative defense

(the "Affirmative Defense") that the Plaintiff "lacks standing" to prosecute the Complaint. More specifically, the Defendant alleges that the Plaintiff initiated the Adversary Case at the direction of a lender who lacked authority to manage the Plaintiff. The crux of the Defendant's argument is that an applicable statute of limitations prevents the lender from continuing to act in a management capacity with respect to the Plaintiff. As a result, the Defendant alleges that the Adversary Case is infirm.

The Plaintiff, in turn, asks the court to strike the Affirmative Defense. The Plaintiff contends that the plain language of the applicable documents affords the lender the right to manage the Plaintiff. The Plaintiff also contends that no statute of limitations has run.

For the reasons set forth more fully below, upon review of the respective filings, the court concludes that the Affirmative Defense fails as a matter of law and that the Plaintiff is therefore entitled to summary judgment on the Affirmative Defense. The Plaintiff's Motion will, therefore, by separate order issued concurrently with this Memorandum Decision, be granted. The Defendant's Motion will be denied and the Affirmative Defense will be stricken.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 23 U.S.C. §§ 157(b)(1), (c). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall*, 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.* at 493, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

As a proceeding to determine the dischargeability of a debt is a matter arising under the Bankruptcy Code and a proceeding to deny debtor's discharge may only arise in a case under the Bankruptcy Code, the Adversary Case is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I) & (J). It follows that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure in the Adversary Case, is also a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) & (2).[1] Further, in accordance with *Stern*, 564 U.S. at 499, the bankruptcy court has constitutional authority to decide matters of nondischargeability, as the debtor's discharge and the dischargeability of a particular debt necessarily stem from the bankruptcy itself. *Parkway Bank & Tr. v. Casali (In re Casali)*, 526 B.R. 271, 274 (Bankr. N.D. Ill. 2015) (Schmetterer, J.); *see also Wan Ho Indus. Co., Ltd. v. Hemken (In re Hemken)*, 513 B.R. 344, 350 (Bankr. E.D. Wis. 2014). Each of the parties has also either expressly or impliedly consented to this court's exercising authority over this matter. In light of the foregoing, the court concludes that it has constitutional authority to finally decide the Motions either directly or through the parties' consent.

Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Motions.

## BACKGROUND

The following background reflects the undisputed facts contained in the submissions of the Parties and the uncontroverted facts contained in the Plaintiff's Counter-Statement of Facts in Opposition to Defendant's Motion for Summary Judgment on Limitations and in Support of Plaintiff's Cross-Motion for Summary Judgment on Limitations [Adv. Dkt. No. 86-6] (the "Plaintiff's Statement").[2] Bankr. N.D. Ill. R 7056-2; *Frankfurt v. Friedman (In re Friedman)*, 531 B.R. 741, 743 (Bankr. N.D. Ill. 2015) (Schmetterer, J.).

The Plaintiff was the owner of certain leasehold interests (the "Leasehold") in a commercial space and underground parking located at 800 South Wells Street in downtown Chicago. Resp., at p. 3. The Leasehold was subject to two mortgages, the lesser of which (the "Second Mortgage") secured certain notes by the Plaintiff (collectively the "Notes") for a $5,900,000.00 debt owed to CIB Bank ("CIB"). *Id.*; Pl.'s Stmt., at p. 3; Pl.'s Stmt., Exh. 190 (June 16, 2010 judgment on the Notes) (the "Notes Judgment"). As further collateral for the debt, CIB received a security interest (the "Security Interest") in all the existing membership interests in the Plaintiff. Resp., at p. 3; Pl.'s Stmt., at p. 3; Def.'s Stmt., Exh. 2-B, at ¶¶ 1.1, 2.1-2.2 (agreement granting security interest in membership interests) (the "Security Agreement").

---

[1]    The Federal Rules of Civil Procedure will be referred to herein individually as "Civil Rule ___." The Federal Rules of Bankruptcy Procedure will be referred to herein individually as "Bankruptcy Rule ___."

[2]    *Compare* Plaintiff's Response to Defendant's Statement of Undisputed Facts in Support of His Motion for Summary Judgment on Limitations [Adv. Dkt. No. 86-7] (the "Response") *with* Defendant's Statement of Undisputed Facts in Support of His Motion for Summary Judgment [Adv. Dkt. No. 81] (the "Defendant's Statement").

3

In March 2005, CIB assigned its interest in the debt to D.A.N. Joint Venture III, L.P. ("DJV"). Resp., at p. 3. In addition to the note and second mortgage position, DJV also holds an assignment of the Security Interest from CIB. *Id.*; Pl.'s Stmt., at p. 4.[3]

The Security Agreement provides that CIB—and then DJV—could take control of the Plaintiff upon default on the underlying debt. Resp., at pp. 3-4; Pl.'s Stmt., at p. 4; Sec. Agreement, at ¶¶ 1-2, 4.8, 4.12, 5-7. The Security Agreement further provides that upon default on the underlying debt and written notice to the owners of the Plaintiff, DJV may exercise the voting rights in the Plaintiff. Sec. Agreement, at ¶ 6.1.

Should those two conditions occur, an irrevocable power of attorney and proxy to vote the membership interests in the Plaintiff, coupled with the Security Interest, will vest in favor of DJV. *Id.*; *see also id.*, at ¶ 4.8 (duplicate power of attorney provisions with further detail on notice procedures). These rights and the power of attorney continue in existence until one condition is met—full payment of the underlying debt. Sec. Agreement, at ¶¶ 4.8, 6.1 ("for so long as any of the Obligations remain unpaid").

The Plaintiff defaulted shortly after DJV took on the loan. Resp., at pp. 3-4; Pl.'s Stmt., at p. 4. By the end of 2005, the Plaintiff owed DJV approximately $10 million on the Second Mortgage and Notes. Pl.'s Stmt., at p. 4. The first mortgagee brought a foreclosure suit in April 2006 and the proceeds of the July 2007 judicial sale were insufficient to cover the amount owed on the first mortgage. *Id.*, at p. 10.

In the same year, DJV began its own collection attempts. DJV sued the Plaintiff on the Notes and the Defendant for breach of a personal guaranty of the loan (the "Guaranty"). *Id.*; Notes Judgment, at ¶¶ 1-2. DJV also exercised its rights under the Security Agreement to seize control of the Plaintiff from the Defendant and River City Investors, LLC ("RCI"), the other member of the Plaintiff. DJV then installed itself as the manager of the Plaintiff. Resp., at p. 4; Pl.'s Stmt., at p. 4.

In the legal action, DJV obtained in 2010 a final judgment against the Plaintiff for the over $11.5 million due under the Notes and against the Defendant for $1 million due under the Guaranty. Pl.'s Stmt., at p. 11; Notes Judgment, at ¶¶ 1-2.[4]

In March 2011, DJV caused the Plaintiff to sue its former manager, the Defendant, for breach of fiduciary duty, abuse of his position for personal gain through self-dealing and other violations of the duty of loyalty. Pl.'s Stmt., at p. 11. In January 2014, the state court defaulted the Defendant and entered an $11,550,040.12 default judgment against him (the "Fiduciary Judgment"). *Id.* While the Plaintiff, still controlled by DJV, attempted to collect on the Fiduciary Judgment, the Defendant fought the same, including through appeals and other attacks. *Id.*, at pp. 12-14.

---

[3] The Notes Judgment indicates that the Defendant also agreed to personally guarantee the loan, *see* Notes Judgment, at ¶ 2, but the Parties have not raised or addressed the Defendant's personal liability to DJV.

[4] The Plaintiff asks the court to take judicial notice of a January 24, 2017 state-court order entered in DJV's suit on the Notes, which order appears to revive the Notes Judgment. As discussed below, however, the revival of the Notes Judgment is not necessary for DJV to enforce the Security Agreement. The court need not address this contention.

These actions culminated in the Defendant's January 17, 2016 chapter 7 bankruptcy filing, at which point none of the forgoing judgments had been satisfied. *Id.*, at pp. 14, 18.

## PROCEDURAL HISTORY

The Plaintiff, still controlled by DJV, commenced the Adversary Case against the Defendant on March 1, 2016. Compl., at p. 13; Resp., at p. 7. The Complaint avers that the debt owed by the Defendant to the Plaintiff on the Fiduciary Judgment suit is nondischargeable under sections 523(a)(4) & (6) of the Bankruptcy Code and that under section 727(a)(2)(A) of the Bankruptcy Code, the Defendant's prepetition conduct should cost him his discharge. Compl., at pp. 11-12. The Defendant answered on May 20, 2016 and asserted, *inter alia*, the Affirmative Defense. Answer, at p. 14.

Following discovery, the Plaintiff moved for partial summary judgment. Plaintiff's Motion for Summary Judgment [Adv. Dkt. No. 52] (the "First Summary Judgment Motion"); *see also* Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment [Adv. Dkt. No. 52-2], at pp. 2-7, 9-11. In the First Summary Judgment Motion, the Plaintiff sought judgment as a matter of law on Count III of the Complaint (the section 727 count) and two of the Defendant's affirmative defenses—unclean hands and the Affirmative Defense.

After briefing and argument, the court ruled on most but not all of the First Summary Judgment Motion, first orally on December 20, 2017, *see* Tr. at pp. 5-20, Dec. 20, 2017 [Adv. Dkt. No. 85] (the "Transcript"), and then by following order on January 1, 2018: Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment [Adv. Dkt. No. 77] (the "First Summary Judgment Order"). There the court granted partial summary judgment in favor of the Plaintiff on certain elements of its claim under section 727(a) of the Bankruptcy Code and full summary judgment in favor of the Plaintiff on the Defendant's unclean hands affirmative defense. *Id.*, at p. 1. However, with respect to the Affirmative Defense, the court found only that DJV had successfully fulfilled the notice requirements under the Security Agreement to take control of the Plaintiff in 2006. *Id.* (granting summary judgment on the Affirmative Defense in favor of the Plaintiff "on the alleged lack of notice issue"); Tr., at pp. 11-14, 18. The remainder of the Affirmative Defense was reserved for later ruling, First Summ. J. Order, at pp. 1-2 (denying summary judgment on the Affirmative Defense "as to the statute of limitations issue" and limiting the Affirmative Defense "to the issue of the statute of limitations for enforcement"); Tr., at pp. 14, 18, upon the Motions and further briefing below.

In addition to the Motions and their accompanying filings, including the memoranda of law and statements of fact, the court has reviewed and considered the following filed documents:

(1)   The Complaint;

(2)   The Answer;

(3)   The First Summary Judgment Order;

(4)   The Defendant's Reply in Support of His Motion for Summary Judgement and His Response in Opposition to Plaintiff's Cross Motion for Summary Judgement [Adv. Dkt. No. 95] (the "Defendant's Reply"); and

5

(5) The Plaintiff's Reply to Defendant's Response to Plaintiff's Cross-Motion for Summary Judgment on Limitations [Adv. Dkt. No. 94].[5]

The court has also taken into consideration all exhibits submitted in conjunction with the foregoing. While these items are not an exhaustive list of the filings in the Adversary Case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

On September 18, 2018, the court conducted a final hearing on this matter, at which hearing the court announced the decision contained herein. To the extent that this Memorandum Decision differs in any way from the announced decision, the Memorandum Decision governs.

## APPLICABLE LAW

Before the court are two motions for partial summary judgment. Summary judgment is appropriate if: first, on the pleadings, moving papers, and affidavits or other evidence submitted therewith there is no genuine issue of material fact; and, second, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e) (made applicable to the Adversary Case by Bankruptcy Rule 7056); *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018).

The purpose of summary judgment is to enable the early disposition of purely legal issues (or the early legal disposition of an entire matter) where there is no evidentiary dispute necessitating a trial. *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, Case No. 13cv01686, 2015 WL 9304343, at *4 (N.D. Ill. Dec. 22, 2015); *Newman v. Assoc. Bank, Nat'l Ass'n (In re World Mktg. Chi., LLC)*, 574 B.R. 670, 677 (Bankr. N.D. Ill. 2017) (Barnes, J.).

First, the movant must, with citation to materials in the record, demonstrate that no genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases in original); *World Mktg.*, 574 B.R. at 677.

To be genuinely at issue, the disputed material fact must be outcome determinative under governing law. *Sylvester v. Martin (In re Martin)*, 130 B.R. 930, 937 (Bankr. N.D. Ill. 1991) (Schmetterer, J.) (*citing Anderson*, 477 U.S. at 248). A genuine issue of material fact exists if, after a resolution of the disputed fact by the factfinder, "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 258; *Dunn*, 880 F.3d at 905. The court makes this determination under the standard that would be used at trial. *Valley Liquors, Inc. v. Renfield Imps., Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987) (*citing Anderson*, 477 U.S. at 252).

---

[5] The inverted docketed order results from the Plaintiff replying to the Defendant's proposed late filing before the court had approved the missed deadline. Once approved, the document was filed instanter, but after the Plaintiff's reply.

6

Summary judgment motions "are usually . . . decided on documentary evidence." *Anderson*, 477 U.S. at 251 (internal quotations omitted). At this stage, "it is not the court's function to resolve factual disputes or to weigh conflicting evidence." *Chi. Reg'l Council of Carpenters Pension Fund v. Jerald Van Der Laan (In re Van Der Laan)* 556 B.R. 366, 372 (Bankr. N.D. Ill. 2016) (Schmetterer, J.) (citations omitted). It is outside the judge's province to assess the credibility of evidence on a summary judgment motion. *Anderson*, 477 U.S. at 255. Nonetheless, the court if needed must make preliminary, nonbinding determinations of what is or is not admissible evidence. *See id.* at 248.

## DISCUSSION

The Affirmative Defense at bar challenges the authority of DJV to control the Plaintiff in bringing the Adversary Case. Though styled as a challenge to standing, Answer, at p. 14, as the court has advised, *see* Tr., at pp. 11, 14, 18; First Summ. J. Order, at p. 1, this is not actually a standing question. The Defendant does not contest the Plaintiff's standing as the real party in interest, the justiciability of the Adversary Case under Article III of the Constitution, the capacity of the Plaintiff to sue or be sued, the ability of the Plaintiff as a creditor of the Defendant to bring an adversary proceeding under section 523 or section 727 of the Bankruptcy Code or whether those claims themselves are affected by a statute of limitations.[6] There appears to be no question that the Plaintiff is entitled to bring the Complaint.

Instead, the Defendant challenges DJV's right to manage the Plaintiff, a limited liability company.

The Defendant's theory is essentially the following: (1) the ten-year statute of limitations for actions on written contracts began to run on the Security Agreement in 2005, when the Plaintiff defaulted on the loan, thereby triggering DJV's remedies under the Security Agreement; (2) DJV had authority over the Plaintiff only a result of the Security Agreement; (3) once the limitations period ran the Security Agreement was no longer enforceable and DJV lost the authority to manage the Plaintiff; (4) the statute ran before the Plaintiff commenced the Adversary Case; and (5) the filing of the Adversary Case is therefore infirm because the Plaintiff acted on the order of a person without authority to so direct the Plaintiff to act. *See* Defendant's Memorandum of Law in Support of His Motion for Summary Judgment [Adv. Dkt. No. 82] (the "Defendant's Memorandum"), at pp. 3-6; *see also* Def.'s Reply, at pp. 2-8.

The Defendant's Affirmative Defense fails on a number of levels.[7] Statutes of limitation do not have the legal effect supposed by the Defendant. They do not negate parties' rights, but rather deny legal recourse on such rights in very specific circumstances. Further, even if a statute of limitations has run on a security agreement or mortgage, under Illinois law, those instruments remain good and enforceable so long as the underlying debt also remains enforceable and unsatisfied.

---

[6]  Neither the Defendant nor the Plaintiff address DJV's own standing to pursue an action as a creditor of the Defendant.

[7]  The Affirmative Defense is not one of the affirmative defenses set forth in Civil Rule 8, *see* Fed. R. Civ. P. 8(c)(1), though that list is not exhaustive. *Jones v. Bock*, 549 U.S. 199, 212 (2007). It is more akin to a capacity claim under Civil Rule 9. *See* Fed. R. Civ. P. 9(a).

The court will consider each of these issues, in turn.

A.    <u>Statutes of Limitation Do Not Extinguish Causes of Action</u>

Recently, bankruptcy and other courts have been given cause to examine in detail the effect of statutes of limitations on claims. *See, e.g., Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1412-14 (2017); *Owens v. LVNV Funding, LLC*, 832 F.3d 726, 731 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 2157 (2017); *Glenn v. Calvary Invs. LLC (In re Glenn)*, 542 B.R. 833, 843-44 (Bankr. N.D. Ill. 2016) (Barnes, J.).

In *Glenn*, this court addressed in detail how parties' rights persist, even after the expiration of the statute of limitation. *Glenn*, 542 B.R. at 842-43. It noted that in Illinois, statutes of limitations differ from statutes of repose. The latter extinguishes obligations, while the former does not. Instead, statutes of limitation simply deny recourse with the courts. *Id.*; *see also Owens*, 832 F.3d at 731 ("In most jurisdictions, including Illinois and Indiana, the expiration of the statute of limitations period does not extinguish the underlying debt."). Statutes of limitations therefore, at least in this context, exist to provide affirmative defenses to time-barred breach of contract claims. *Fleming v. Yeazal*, 40 N.E.2d 507, 508 (Ill. 1942); *Newland v. Marsh*, 19 Ill. 376, 383-85 (1857); *accord Spear v. Norwest Bank Neb. (In re Estate of Reading)*, 626 N.W.2d 595, 600-01 (Neb. 2001).

The running of a statute of limitations will not, therefore, for example, prevent an executor from applying a decedent's property to pay off outstanding, time-barred debts before making distributions, *Fleming*, 40 N.E.2d at 508, nor will it preclude setoff or recoupment based on a time-barred contract. *La Pine Sci. Co. v. Lenckos*, 420 N.E.2d 655, 658 (Ill. App. Ct. 1981). Similarly, a secured party in possession of collateral when the statute runs may, nevertheless, retain its collateral until the time-barred debt is paid. *Glenn*, 542 B.R. at 844 (*citing Gratiot v. United States*, 40 U.S. 336, 370 (1841)); *Am. Acoustics & Plastering Co. v. Dep't of Rev.*, 437 N.E.2d 419, 424 (Ill. App. Ct. 1982); *accord Davis v. Savage*, 168 P.2d 851, 861-62 (N.M. 1946).

As statues of limitations bar only the remedy of lawsuits on contracts and do not nullify contracts themselves, courts have rejected the theory that statutes of limitation on contract claims have a collateral effect in lawsuits where the running of the statute could not be raised directly as an affirmative defense. The Seventh Circuit, for example, where a plaintiff sought payment by insurers of certain medical costs to providers whose collection claims against the plaintiff were already time-barred, rejected the position that the case was moot because the statute of limitations on the providers' claims had run. *Killian v. Concert Health Plan*, 742 F.3d 651, 663 (7th Cir. 2013). The debts were still owed even though the statute had run, and an action to have the debts satisfied by a third party was not moot merely because the plaintiff would have a defense to a hypothetical collection action by his creditors. *Id.*

In this matter, there are no claims before the court for a statute of limitations to bar. In the absence of such claims, the Security Agreement, as is discussed below, remains effective and controls the parties' rights. *See Killian*, 742 F.3d at 663; *Spear*, 626 N.W.2d at 600-01; *Fleming*, 40 N.E.2d at 508. The running of a statute of limitations, even had it occurred, would not deprive DJV of its rights under or property acquired by virtue of the Security Agreement, including the power of attorney and voting rights. *Newland*, 19 Ill. at 384-85. Directing the Plaintiff to file the Adversary Case is well within the range of conduct permissible on a time-barred contract. *Am. Acoustics*, 437 N.E.2d at 424 (retention and application of collateral in hand to time-barred debt); *see also Owens*, 832

F.3d at 731 (filing of a proof of claim for a stale debt in a bankruptcy case); *Keener v. Crull*, 19 Ill. 189, 190-91 (1857) (entering into a new contract with the debtor for the repayment of the stale debt).

Accordingly, the Defendant cannot use the statute of limitations in the Adversary Case to DJV's authority over the Plaintiff ineffective, thereby barring the Plaintiff's action.

B.  Security for a Debt Is Incident to the Debt

Even if the Defendant were correct that the running of a statute of limitations limited substantive rights and obligations under the Security Agreement, and assuming for the moment that the limitations period applicable to the Security Agreement had in fact run, the Security Agreement would, nevertheless, be effective and enforceable, as the underlying debt that the Security Agreement secures—the Notes Judgment—has yet to be satisfied and remains enforceable.

Extensions of the time to enforce a debt also extend the life of the security for the debt, and a suit against the security, for example, to foreclose a mortgage, will not be time-barred if the creditor could still enforce the underlying debt, even if the limitations period on the security has run. *Kraft v. Holzman*, 69 N.E. 574, 549-50 (Ill. 1903) (extension of payment term for debt permitted mortgage to remain enforceable even though the statute of limitations for the mortgage had run); *Roberts v. Tunnell*, 46 N.E. 713, 714 (Ill. 1897) (extension of limitations on action on notes also extended limitations for suit to foreclose property securing debt); *Schifferstein v. Allison*, 15 N.E. 275, 276 (Ill. 1888) (statute of limitations on enforcing security for a debt to be read as subject to and dependent on statute of limitations on the debt itself).

Further, where a creditor effectively extends the life of a debt by reducing it to judgment, what stood as security for the debt prior to judgment stands as security for the judgment, and that security will remain enforceable while the judgment remains unpaid and enforceable. *Priest v. Wheelock*, 58 Ill. 114, 116-17 (1871) (where a creditor had obtained a judgment on a note secured by a mortgage, the mortgage secured the judgment after its entry and the creditor could sue to foreclose the mortgage at any time within the period for reviving the judgment); *Roberts v. Lawrence*, 16 Ill. App. 453, 455-56 (1885) (the security for a debt remains enforceable so long as a judgment for the debt is enforceable; accordingly, the creditor could sue to enforce its consensual lien (which then secured the judgment) *even though* the statute of limitations on a suit to foreclose the lien had run); *see also Skach v. Gee*, 484 N.E.2d 441, 443 (Ill. App. Ct. 1985) (changes in the form of evidence for a debt do not release the security for that debt). The Adversary Case was commenced on March 1, 2016.

Here, the Plaintiff obtained the Notes Judgment on June 16, 2010. When that occurred, the Security Agreement, which secured the debt on the Notes prior to judgment, then stood as security for the debt on the Notes Judgment after its entry. *Priest*, 58 Ill. at 116-17; *Lawrence*, 16 Ill. App. at 455-56; *cf. Skach*, 484 N.E.2d at 443; *Kraft*, 69 N.E. at 549-50; *Tunnell*, 46 N.E. at 714. The Notes Judgment, however, is not subject to the statute of limitations on written agreements, *see* 735 ILCS 5/13-206 (the ten-year statute of limitations for written instruments), but the statutes applicable to judgments. *See* 735 ILCS 5/12-108 (seven-year period for enforcing judgments); 735 ILCS 5/2-1602 (twenty-year period for revival of judgments).

It is undisputed that the Notes Judgment remains unpaid and revivable. Thus, even if the contractual limitations period has run, DJV may still enforce the Notes Judgment and by so doing, still enforce the debt and the security incident to it. The Security Agreement remains bound to the

Notes Judgment until that debt is satisfied or barred, and the rights afforded DJV under the Security Agreement, therefore, remain effective.

## CONCLUSION

For the reasons stated above, by separate order entered concurrently herewith, the Defendant's Motion will be DENIED and the Plaintiff's Motion will be GRANTED.

Dated: September 25, 2018          ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge